MICHAEL J. STORTZ (SBN 139386)
Michael.Stortz@dbr.com
MATTHEW J. ADLER (SBN 273147)
Matthew.Adler@dbr.com
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, California  94105-2235
Telephone:     (415) 591-7500
Facsimile:      (415) 591-7510

SEAMUS C. DUFFY*
seamus.duffy@dbr.com
MICHAEL W. MCTIGUE JR.*
michael.mctigue@dbr.com
MEREDITH C. SLAWE*
meredith.slawe@dbr.com
DRINKER BIDDLE & REATH LLP
One Logan Square, Ste. 2000
Philadelphia, PA  19103-6996
Telephone:     (215) 988-2700
Facsimile:      (215) 988-2757

Attorneys for Defendant
COMCAST CABLE COMMUNICATIONS, LLC
*pro hac vice to be sought

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BRANDON HODGES, for himself, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COMCAST CABLE COMMUNICATIONS, LLC, a Delaware limited liability company; and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 3:18cv1829<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY LITIGATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:        May 18, 2018<br>Time:       9:30 a.m.<br>Ctrm:       G – 15th Floor<br>Judge:      Hon. Joseph C. Spero |

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

91624664.9
DEFENDANT'S NOTICE OF MOTION AND MOTION
TO COMPEL INDIVIDUAL ARBITRATION

CASE NO. 3:18cv1829

1

## <u>NOTICE OF MOTION</u>

2   TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3        PLEASE TAKE NOTICE that on May 18, 2018 at 9:30 a.m., or as soon thereafter as this

4   matter may be heard by the Honorable Joseph C. Spero, in Courtroom G of the above-entitled court

5   located at 450 Golden Gate Ave., San Francisco, CA 94102, Defendant Comcast Cable

6   Communications, LLC ("Comcast"), by and through its counsel of record, will and hereby does

7   move this Court to enter an Order pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–16, that

8   (a) compels Plaintiff Brandon Hodges ("Plaintiff") to comply with the arbitration provision in his

9   Agreement for Residential Services and (b) stays this action on the ground that Plaintiff is a party to

10   a valid arbitration agreement with Comcast that is applicable to his claims for relief in this action.

11        This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points

12   and Authorities in support thereof, the accompanying Declaration of Alicia Wade and exhibits

13   thereto, as well as all papers and pleadings on file or deemed to be on file herein, and such

14   argument as may be presented at a hearing.

15

16   Dated: March 30, 2018                    DRINKER BIDDLE & REATH LLP

17

18                                           By: /s/ Michael J. Stortz
                                                 Michael J. Stortz
19                                               Matthew J. Adler

20                                               Seamus C. Duffy
                                                 Michael W. McTigue Jr.
21                                               Meredith C. Slawe

22                                           Attorneys for Defendant
                                             COMCAST CABLE COMMUNICATIONS, LLC

23

24

25

26

27

28

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

91624664.9
DEFENDANT'S NOTICE OF MOTION AND MOTION
TO COMPEL INDIVIDUAL ARBITRATION

CASE NO. 3:18CV1829

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................... 1

II. BACKGROUND ................................................................................................... 2

    A.     Plaintiff Received and Accepted the Subscriber Agreement. .................................. 2

    B.     The Subscriber Agreement Contains an Arbitration Provision.............................. 4

    C.     Plaintiff Did Not Opt Out of the Arbitration Provision. .......................................... 5

III. ARGUMENT ...................................................................................................... 6

    A.     The FAA Applies to the Subscriber Agreement's Arbitration Clause. ................... 6

    B.     Plaintiff is Bound by the Arbitration Provision in His Subscriber Agreement. ........................................................................................................... 7

    C.     Plaintiff's Claims Fall Within the Scope of the Arbitration Provision.................... 9

    D.     Plaintiff Should Be Compelled to Comply with His Arbitration Agreement, and This Action Should Be Stayed Pending Any Arbitration Proceeding. ........... 10

IV. CONCLUSION ................................................................................................... 11

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

91624664.9

DEFENDANT'S NOTICE OF MOTION AND MOTION
TO COMPEL INDIVIDUAL ARBITRATION

- i -

CASE NO. 3:18CV1829

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allied-Bruce Terminix Cos. v. Dobson*,
  513 U.S. 265 (1995) ................................................................................................ 6

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ................................................................................................ 6

*Brown v. Comcast Corp.*,
  No. 16-3649, 2016 U.S. Dist. LEXIS 176880 (N.D. Cal. Dec. 21, 2016) ............................... 8

*Brown v. DIRECTV, LLC*,
  No. 12-8382, 2013 WL 3273811 (C.D. Cal. June 26, 2013) ................................................ 10

*Chiron Corp. v. Ortho Diagnostic Sys.*,
  207 F.3d 1126 (9th Cir. 2000) ............................................................................... 7, 11

*Cordas v. Uber Techs., Inc.*,
  228 F. Supp. 3d 985 (N.D. Cal. 2017) ......................................................................... 6, 7

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) ............................................................................................ 6, 11

*Ferguson v. Corinthian Colls., Inc.*,
  733 F.3d 928 (9th Cir. 2013) ..................................................................................... 10

*Friedman v. Mercedes Benz USA LLC*,
  No. 12-7204, 2013 WL 12086785 (C.D. Cal. Jan. 31, 2013) ................................................ 10

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991) .................................................................................................. 6

*James v. Comcast Corp.*,
  No. 16-2218, 2016 WL 4269898 (N.D. Cal. Aug. 15, 2016) .................................................. 8

*Jordan v. Comcast Cable Commc'ns Mgmt., LLC*,
  No. 14-3622, 2016 WL 452145 (N.D. Ga. Feb. 4, 2016) ..................................................... 8, 9

*Kaspers v. Comcast Corp.*,
  631 F. App'x 779 (11th Cir. 2015) .............................................................................. 8

*Losapio v. Comcast Corp.*,
  No. 10-3438, 2011 WL 1497652 (N.D. Ga. Apr. 19, 2011) ................................................... 8, 9

*Montoya v. Comcast Corp.*,
  No. 15-2573, 2016 WL 5340651 (E.D. Cal. Sept. 23, 2016) ................................................. 8, 9

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

91624664.9
DEFENDANT'S NOTICE OF MOTION AND MOTION
TO COMPEL INDIVIDUAL ARBITRATION
- ii -
CASE NO. 3:18cv1829

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)....................................................................................................10, 11

*Nghiem v. NEC Elec., Inc.*,
    25 F.3d 1437 (9th Cir. 1994)..........................................................................................7

*Perry v. Thomas*,
    482 U.S. 483 (1987)........................................................................................................6

*Sanders v. Comcast Cable Holdings, LLC*,
    No. 07-0918, 2008 WL 150479 (M.D. Fla. Jan. 14, 2008).........................................8

*Schwartz v. Comcast Corp.*,
    256 F. App'x 515 (3d Cir. 2007) ...................................................................................8

*Westinghouse Hanford Co. v. Hanford Atomic Metal Trades Council*,
    940 F.2d 513 (9th Cir. 1991) .......................................................................................10

## STATUTES, RULES & REGULATIONS

9 U.S.C. § 2 .............................................................................................................................6

9 U.S.C. § 3 .......................................................................................................................1, 11

9 U.S.C. § 4 .......................................................................................................................1, 11

47 U.S.C. § 551 ......................................................................................................................1

Cal. Bus. & Prof. Code § 17200 *et seq.* .............................................................................1

Cal. Civ. Code § 1589 ...........................................................................................................8

Cal. Penal Code § 637.5.....................................................................................................1, 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

91624664.9
DEFENDANT'S NOTICE OF MOTION AND MOTION
TO COMPEL INDIVIDUAL ARBITRATION

- iii -

CASE NO. 3:18CV1829

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.**

3

**INTRODUCTION**

4   Plaintiff Brandon Hodges ("Plaintiff") alleges that he previously received cable television

5 services from Defendant Comcast Cable Communications, LLC ("Comcast").  *See* Compl. ¶¶ 19,

6 24.  Plaintiff alleges that, throughout his subscription to Comcast's cable television services,

7 "Comcast collected and maintained Plaintiff's personally identifiable video activity data and

8 demographic data . . . ."  *Id.* ¶ 22.  While Plaintiff acknowledges that Comcast provided to him

9 copies of its Customer Privacy Notice (the "Privacy Notice"), both "[w]hen [his] cable television

10 subscription began, and at least once a year thereafter," *id.* ¶ 20, Plaintiff alleges that Comcast did

11 not have Plaintiff's consent to collect his video activity data.  *See id.* ¶ 21.  Plaintiff further alleges

12 that, when he asked Comcast in November 2017 to produce the personally identifiable information

13 ("PII") associated with his account, Comcast provided "only his name, the last four digits of his

14 social security number, his service address, and his telephone number."  *Id.* ¶ 24.  Based on these

15 allegations, Plaintiff asserts claims under Section 551 of the Cable Communications Policy Act of

16 1984, 47 U.S.C. § 551 (the "Cable Act"), Section 637.5 of the California Invasion of Privacy Act,

17 Cal. Penal Code § 637.5 ("CIPA"), and California's Unfair Competition Law, Cal. Bus. & Prof.

18 Code § 17200 *et seq.* (the "UCL").  *See id.* ¶¶ 33–47.

19   Although Comcast maintains that Plaintiff's claims lack merit for several reasons, they do

20 not belong in court because Plaintiff has agreed that disputes such as this one should be addressed

21 by an arbitrator.  Plaintiff's Comcast services are governed by the Comcast Agreement for

22 Residential Services (the "Subscriber Agreement"), which contains a binding arbitration provision

23 requiring resolution of all claims related to Comcast through an individual arbitration proceeding.

24 Because Plaintiff's claims fall squarely within the scope of his arbitration agreement, the Court

25 should order Plaintiff to abide by his agreement and stay this action pursuant to Sections 3 and 4 of

26 the Federal Arbitration Act ("FAA").

27

28

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

91624664.9
DEFENDANT'S NOTICE OF MOTION AND MOTION
TO COMPEL INDIVIDUAL ARBITRATION

- 1 -

CASE NO. 3:18cv1829

## II.

## BACKGROUND

**A.    Plaintiff Received and Accepted the Subscriber Agreement.**

Plaintiff has had two Comcast accounts, the most recent of which is still active.  In September 2014, a Comcast technician activated Internet services at Plaintiff's prior address in Oakland, California.  *See* Declaration of Alicia Wade ("Wade Decl.") ¶¶ 4–5.  In January 2015, Plaintiff transferred his services, under a new account number, to his current address.  *See id.* ¶ 8.  Plaintiff used self-install kits to activate Internet and cable television services under his new account in January 2015 and October 2015, respectively.  *See id.* ¶¶ 9–10.

As a matter of routine and regular business practice, subscribers whose services are installed by a Comcast technician receive a Welcome Kit at the time of installation that includes copies of the Subscriber Agreement and the Privacy Notice.  *See id.* ¶ 6.  Accordingly, Plaintiff received copies of the Subscriber Agreement and the Privacy Notice in September 2014 when his Internet services initially were installed.  *See id.* ¶ 7.  Likewise, subscribers who self-install their services receive a Welcome Kit, which includes copies of the Subscriber Agreement and the Privacy Notice, included with a self-install kit sent to them by Comcast.  *See id.* ¶ 11.  Plaintiff thus also received copies of the Subscriber Agreement and Privacy Notice in January 2015, when he transferred and self-installed Internet services, under a new account number at his current address, and then again in October 2015, when he self-installed cable television services under that account.  *See id.* ¶¶ 12–13.  Plaintiff specifically acknowledges that Comcast provided the Privacy Notice to him in connection with the installation of his cable television services, *see* Compl. ¶ 20, and pursuant to Comcast's routine and regular business practices, Plaintiff also would have received a copy of the Subscriber Agreement at this time.  *See* Wade Decl. ¶¶ 11, 13.

The Subscriber Agreements that were in effect at the time of Plaintiff's installations in September 2014, January 2015, and October 2015 are attached as Exhibits 1 through 3 to Ms. Wade's Declaration (each immediately following the Privacy Notice).  On the first page of each of these versions of the Subscriber Agreement, Section 1 states, in boldfaced type, "**You will have accepted this Agreement and be bound by its terms if you use the Service(s) or otherwise**

Drinker Biddle &
Reath LLP
Attorneys at Law
San Francisco

91624664.9
Defendant's Notice of Motion and Motion
to Compel Individual Arbitration
- 2 -
Case No. 3:18cv1829

**indicate your affirmative acceptance of such terms.**" Wade Decl., Ex. 1, § 1 (emphasis in original); *id.*, Ex. 2, § 1 (emphasis in original); *id.*, Ex. 3, § 1 (emphasis in original). Upon receiving each Subscriber Agreement, Plaintiff accepted the Agreement in precisely the manner specified by the Agreement: he "use[d] the Service(s)" provided—and indeed has done so through the present. *See id.* ¶ 16; *see also* Compl. ¶ 19 (alleging Plaintiff "subscribed to Comcast cable television service for his residence in Oakland from in or about December 2015 to January 31, 2018").

Each of the Subscriber Agreements that was in effect at the time of Plaintiff's installations specifies that it "will be in effect from the time that the Service(s) are activated until (1) it is terminated as provided for by this Agreement or by any addendum to this Agreement or (2) it is replaced by a revised Agreement." Wade Decl., Ex. 1, § 9(a); *id.*, Ex. 2, § 9(a); *id.*, Ex. 3, § 9(a). In 2017, Comcast revised the terms of the Subscriber Agreement and sent a copy of the same to its subscribers, including Plaintiff. *See id.* ¶ 14. The version of the Subscriber Agreement that Plaintiff received in 2017 is attached as Exhibit 4 to Ms. Wade's Declaration. Like Plaintiff's prior Subscriber Agreements, this version of the Subscriber Agreement also provided, on the first page[1] and in Section 1, "**If you use or otherwise indicate your acceptance of the Service(s), you have accepted this Agreement and agree to be bound by its terms.**" *Id.*, Ex. 4 at 2, § 1 (emphasis in original). This version of the Subscriber Agreement further stated that it "replace[d] any and all prior written or verbal agreements." *Id.*, Ex. 4 at 4, § 15(a). Again, Plaintiff accepted the Subscriber Agreement by continuing to use his Comcast Internet and cable television services. *See* Compl. ¶ 19.

Plaintiff alleges that he "is no longer a Comcast cable television subscriber." Compl. ¶ 24; *see also id.* ¶ 19 (alleging that Plaintiff stopped subscribing to Comcast cable television services on or about January 31, 2018). Plaintiff's Complaint is silent, however, as to the fact that he still receives Comcast Internet services. *See* Wade Decl. ¶ 16. When Plaintiff called Comcast on January 31, 2018, he cancelled his cable television services and placed a new order to receive

---

[1] The first page of the hard-copy Agreement is technically a title page; the first page of content begins on page two. *Id.*, Ex. 4 at 2, § 1

91624664.9
- 3 -

1  promotional pricing for his Internet services. *See id.* The Comcast representative with whom

2  Plaintiff spoke sent Plaintiff a text message to his cellular telephone that provided a link to review

3  and accept his new order. *See id.* Plaintiff accepted his new order and received from Comcast an

4  email summary of the same, which reiterated that his services are provided on the terms and

5  conditions set forth in the Subscriber Agreement and the Privacy Notice. *See id.* ¶¶ 17–18.

6  Plaintiff invokes the terms of the Privacy Notice in effect as of January 31, 2018 in his Complaint.

7  *See* Compl. ¶¶ 7 (& n.1), 8(a), 11 (& n.4), 16.

8      The version of the Subscriber Agreement in effect as of Plaintiff's January 31, 2018 order is

9  attached as Exhibit 6 to Ms. Wade's declaration. This version of the Subscriber Agreement, like

10  Plaintiff's prior Subscriber Agreements, states in Section 1 located on the first page, "**If you use or**

11  **otherwise indicate your acceptance of the Service(s), you have accepted this Agreement and**

12  **agree to be bound by its terms.**" *Id.*, Ex. 6, § 1 (emphasis in original). This version of the

13  Subscriber Agreement further states that it "replace[s] any and all prior written or verbal

14  agreements." *Id.*, Ex. 6, § 15(a). Plaintiff continues to receive Internet services through the present.

15  *See id.* ¶ 16.

16  **B.   The Subscriber Agreement Contains an Arbitration Provision.**

17      The first page of the Subscriber Agreement states in boldfaced, all-caps type:

18          **THIS AGREEMENT CONTAINS A BINDING**
            **ARBITRATION PROVISION IN SECTION 13 THAT**
19          **AFFECTS YOUR RIGHTS UNDER THIS AGREEMENT**
            **WITH RESPECT TO ALL SERVICE(S).  THE**
20          **ARBITRATION PROVISION REQUIRES THAT DISPUTES**
            **BE RESOLVED IN INDIVIDUAL ARBITRATIONS OR**
21          **SMALL CLAIMS COURT PROCEEDINGS.  IN**
            **ARBITRATION, THERE IS NO JUDGE OR JURY AND**
22          **THERE IS LESS DISCOVERY AND APPELLATE REVIEW**
            **THAN IN COURT.**
23

24  *Id.*, Ex. 6 at 1 (emphasis and typography in original).[2]

25      In Section 13, under the boldfaced heading "**BINDING ARBITRATION**," the Subscriber

26  Agreement contains the following arbitration provision:

27  _____

28  [2]  Each of Plaintiff's prior Subscriber Agreements similarly notified subscribers, on the first page, regarding the existence of a binding arbitration provision in Section 13 of the Agreement. *See id.*, Ex. 1 at 1; *id.*, Ex. 2 at 1; *id.*, Ex. 3 at 1; *id.*, Ex. 4 at 2.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

91624664.9
DEFENDANT'S NOTICE OF MOTION AND MOTION
TO COMPEL INDIVIDUAL ARBITRATION          - 4 -          CASE NO. 3:18cv1829

1
2

> Any Dispute involving you and us shall be resolved through individual arbitration. In arbitration, there is no judge or jury and there is less discovery and appellate review than in court.

3

*Id.*, Ex. 6, § 13(a).  The arbitration provision further provides:

4
5
6
7
8
9
10

> This Arbitration Provision shall be broadly interpreted.  "Dispute" means any claim or controversy related to us or our relationship, including but not limited to any and all:  (1) claims for relief and theories of liability, whether based in contract, tort, fraud, negligence, statute, regulation, ordinance, or otherwise; (2) claims that arose before this or any prior Agreement; (3) claims that arise after the expiration or termination of this Agreement, and (4) claims that are the subject of purported class action litigation.  As used in this Arbitration Provision, "us" means Comcast and any of its predecessors, successors, assigns, parents, subsidiaries, and affiliates, and each of their respective officers, directors, employees and agents, and "you" means you and any users or beneficiaries of the Xfinity Service(s) or Equipment.

11

*Id.*, Ex. 6, § 13(b).

12
13
14
15

The arbitration provision also contains a number of provisions that make arbitration less costly and more flexible for subscribers, such as providing access to a convenient forum, *id.*, Ex. 6, § 13(g), and requiring Comcast to pay for arbitral fees and costs where claims seek less than $75,000.  *Id.*, Ex. 6, § 13(i).

16

**C.    Plaintiff Did Not Opt Out of the Arbitration Provision.**

17
18
19
20
21
22
23
24

The arbitration provision in the Subscriber Agreement provides new subscribers with the opportunity to opt out of arbitration.  *See id.*, Ex. 6, § 13(d).[3]  Such subscribers may elect to opt out of the arbitration agreement "WITHIN 30 DAYS OF YOUR FIRST XFINITY SERVICE ACTIVATION," either online or via mail at the specific addresses set forth in the Agreement.  *Id.* (typography in original).  The Subscriber Agreement does not provide a renewed opportunity to opt out for existing customers; however, Comcast maintains records of all opt-out requests that it receives from its subscribers, and its review of its records has revealed no opt-out requests made by Plaintiff or otherwise made in connection with his accounts.  *See id.* ¶¶ 21–22.

25
26
27
28

---

[3]  Plaintiff's prior Subscriber Agreements, in effect at the time of installation of his services, also provided an opportunity to opt out of the arbitration agreement.  *See id.*, Ex. 1, § 13(c); *id.*, Ex. 2 § 13(c); *id.*, Ex. 3, § 13(c).

# III.

# ARGUMENT

For the reasons set forth below, this case should be stayed and Plaintiff should be compelled to abide by the arbitration provision in his Subscriber Agreement.

**A.**     **The FAA Applies to the Subscriber Agreement's Arbitration Clause.**

Arbitration agreements must meet two conditions in order for the FAA to apply:  (1) they must be in writing; and (2) they must be part of "a contract evidencing a transaction involving commerce."  9 U.S.C. § 2.  Arbitration provisions that satisfy these two requirements are "valid, irrevocable, and enforceable" under federal law.  *Id.*

The FAA applies here.  The Subscriber Agreement and its arbitration provision are in writing, *see* Wade Decl., Ex. 6, § 13, and the Agreement evidences transactions involving commerce, namely the provision of interstate telecommunication services.  *See, e.g.*, *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–74 (1995).  Indeed, the arbitration agreement in the Subscriber Agreement states that it is governed by the FAA.  Wade Decl., Ex. 6, § 13(g) ("This Arbitration Provision shall be governed by the Federal Arbitration Act.").

Where the FAA applies, Congress has expressed a strong public policy favoring arbitration.  Courts are not only encouraged, but also required to "rigorously enforce" arbitration agreements.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).  Congress enacted the FAA in order to "reverse the longstanding judicial hostility to arbitration agreements" and to place such agreements on "the same footing as other contracts."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("[C]ourts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms."); *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (describing the FAA as "'a congressional declaration of a liberal federal policy favoring arbitration agreements'" (citation omitted)).

"The role of a district court under the FAA is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 988 (N.D. Cal. 2017) (internal

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

91624664.9
DEFENDANT'S NOTICE OF MOTION AND MOTION
TO COMPEL INDIVIDUAL ARBITRATION

- 6 -

CASE NO. 3:18CV1829

1  quotation marks and citation omitted); *see also Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d

2  1126, 1130 (9th Cir. 2000) (same).  "If the response is affirmative on both counts, then the [FAA]

3  requires the court to enforce the arbitration agreement in accordance with its terms."  *Cordas*, 228

4  F. Supp. 3d at 988 (internal quotation marks and citation omitted).

5  **B.**     **Plaintiff is Bound by the Arbitration Provision in His Subscriber Agreement.**

6         This Court should find that a valid arbitration agreement exists between Plaintiff and

7  Comcast.  Plaintiff is bound by the Subscriber Agreement, including its arbitration provision.

8         Plaintiff first received the Subscriber Agreement in September 2014, when a Comcast

9  technician initially installed Internet services at his prior address.  *See* Wade Decl. ¶¶ 5–7, Ex. 1.

10  Plaintiff subsequently used his Comcast services.  *See id.* ¶ 8.  Plaintiff received additional copies of

11  the Subscriber Agreement in January 2015 and October 2015, when he self-installed Internet and

12  cable television services, respectively, at his current address under a new account number.  *See id.*

13  ¶¶ 8–13.  Plaintiff continued to use his Comcast services.  *See id.* ¶ 16; *see also* Compl. ¶ 19

14  (alleging Plaintiff "subscribed to Comcast television service for his residence in Oakland from in or

15  about December 2015 to January 31, 2018").  Most recently, on January 31, 2018, Plaintiff agreed

16  to a new order for promotional Internet pricing and received a confirmation email reiterating that

17  his services are provided on the terms and conditions set forth in the Subscriber Agreement.

18  *See* Wade Decl. ¶¶ 16–18.  Plaintiff continues to use Internet services through the present.  *See id.*

19  ¶ 16.

20         Plaintiff manifested his assent to all versions of the Subscriber Agreement that he received,

21  including most recently in connection with his January 31, 2018 order for promotional Internet

22  pricing, by using the services provided to him pursuant to the Agreements.  *See, e.g., id.*, Ex. 6, § 1

23  (**"If you use . . . the Service(s), you have accepted this Agreement and agree to be bound by its**

24  **terms."** (emphasis in original)).[4]  Numerous decisions affirm that a plaintiff's use of Comcast

25  services provided pursuant to the Subscriber Agreement constitutes acceptance of the same,

26

27  ───────────────
[4] The FAA does ***not*** require a signature for an arbitration agreement to be enforceable.  *Nghiem v.*

28  *NEC Elec., Inc.*, 25 F.3d 1437, 1439 (9th Cir. 1994) ("While the FAA 'requires a writing, it does
not require that the writing be signed by the parties.'" (citation omitted)).

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

91624664.9
DEFENDANT'S NOTICE OF MOTION AND MOTION
TO COMPEL INDIVIDUAL ARBITRATION                    - 7 -                    CASE NO. 3:18cv1829

including the arbitration provision contained therein.  *See, e.g.*, *Brown v. Comcast Corp.*, No. 16-3649, 2016 U.S. Dist. LEXIS 176880, at *1–2 (N.D. Cal. Dec. 21, 2016) ("By using Comcast's services, each of the Plaintiffs agreed to Comcast's 'Subscriber Agreement,' which includes the . . . 'Binding Arbitration' provision."); *James v. Comcast Corp.*, No. 16-2218, 2016 WL 4269898, at *2 (N.D. Cal. Aug. 15, 2016) (finding plaintiff accepted terms of the Subscriber Agreement, including its arbitration provision, "when he continued to use Comcast's services without opting out"). *See also Montoya v. Comcast Corp.*, No. 15-2573, 2016 WL 5340651, at *5 (E.D. Cal. Sept. 23, 2016) (finding that plaintiffs used Comcast services "and therefore accepted its terms," including the arbitration agreement); *Jordan v. Comcast Cable Commc'ns Mgmt., LLC*, No. 14-3622, 2016 WL 452145, at *5–6 (N.D. Ga. Feb. 4, 2016) (compelling arbitration where defendant showed routine and regular business practice of providing customers with the Subscriber Agreement in a welcome kit, and plaintiff "utilized Comcast's services"); *Losapio v. Comcast Corp.*, No. 10-3438, 2011 WL 1497652, at *3 (N.D. Ga. Apr. 19, 2011) ("[V]alid contracts, including contracts containing arbitration clauses, may be formed by a party's continued use or acceptance of services without objection."); *Sanders v. Comcast Cable Holdings, LLC*, No. 07-0918, 2008 WL 150479, at *3–6 (M.D. Fla. Jan. 14, 2008) (holding that plaintiffs' continued receipt of Comcast's services supported a finding that plaintiffs agreed to arbitrate); Cal. Civ. Code § 1589 ("[V]oluntary acceptance of . . . benefit[s]" of transaction is "equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting.").

Plaintiff therefore should be found to have entered into an arbitration agreement with Comcast on the basis of his continued use of services provided pursuant to the Subscriber Agreement through the present.  Indeed, numerous courts across the country have found Comcast subscribers to be bound by the Subscriber Agreement based on their use of Comcast services, and required arbitration of their claims pursuant to the terms of that agreement.  *See, e.g.*, *Brown*, 2016 U.S. Dist. LEXIS 176880, at *3; *James*, 2016 WL 4269898, at *2–5; *Kaspers v. Comcast Corp.*, 631 F. App'x 779, 784 (11th Cir. 2015) (affirming order compelling arbitration); *Schwartz v. Comcast Corp.*, 256 F. App'x 515, 518 (3d Cir. 2007) (holding that evidence of practice regarding provision of Subscriber Agreement constituted prima facie evidence that plaintiff was aware of

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

91624664.9
DEFENDANT'S NOTICE OF MOTION AND MOTION
TO COMPEL INDIVIDUAL ARBITRATION                - 8 -                CASE NO. 3:18cv1829

1   Subscriber Agreement); *Montoya*, 2016 WL 5340651, at *5 (granting motion to compel arbitration

2   and staying action pending arbitration where plaintiffs used Comcast services "and therefore

3   accepted its terms"); *Jordan*, 2016 WL 452145, at *5 (granting motion to compel arbitration where

4   Comcast offered an affidavit "showing that it is Comcast's routine and regular business practice to

5   provide the [Subscriber Agreement] to customers in a welcome kit when they initiate their

6   service"); *Losapio*, 2011 WL 1497652, at *3 (finding arbitration agreement formed through use of

7   Comcast services).

8           The same conclusion follows here.  Plaintiff's use of Comcast services manifested his

9   affirmative acceptance of the terms of the Subscriber Agreement, including the arbitration

10  provision.  Plaintiff is therefore required to arbitrate any claims within the scope of the arbitration

11  provision.

12  **C.      Plaintiff's Claims Fall Within the Scope of the Arbitration Provision.**

13          This Court should also find that the arbitration agreement encompasses the dispute at issue.

14  Here, Plaintiff's claims fall squarely within the scope of the arbitration agreement in the Subscriber

15  Agreement, which requires arbitration of any "Dispute involving you and [Comcast]."  Wade Decl.,

16  Ex. 6, § 13(a).  The claims that Plaintiff has asserted against Comcast in this action unquestionably

17  constitute disputes involving Plaintiff and Comcast and therefore are subject to arbitration.

18          Moreover, under the Subscriber Agreement, "Dispute" is broadly defined as, among other

19  things, "any claim or controversy related to us or our relationship, including but not limited to any

20  and all: (1) claims for relief and theories of liability, whether based in contract, tort, fraud,

21  negligence, statute, regulation, ordinance, or otherwise; [and] (2) claims that arose before this or

22  any prior Agreement . . . ."  *Id.*, Ex. 6, § 13(b); *see also id.* ("This Arbitration Provision shall be

23  broadly interpreted.").  Here, the claims asserted by Plaintiff stem directly from Comcast's

24  provision of cable television services.  *See generally* Compl.  Accordingly, Plaintiff's claims plainly

25  are "related to [Comcast]" or otherwise related to the "relationship" between Plaintiff and Comcast.

26  Wade Decl., Ex. 6, § 13(b).  Further, Plaintiff asserts claims arising under certain federal and

27  California statutes, specifically the Cable Act, CIPA, and the UCL.  *See* Compl. ¶¶ 33–47.  The

28  arbitration provision encompasses such statutory claims.  *See* Wade Decl., Ex. 6, § 13(b) (arbitrable

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

91624664.9
DEFENDANT'S NOTICE OF MOTION AND MOTION
TO COMPEL INDIVIDUAL ARBITRATION                    - 9 -                    CASE NO. 3:18cv1829

disputes include "claims for relief and theories of liability, whether based in contract, tort, fraud, negligence, *statute*, regulation, ordinance, or otherwise." (emphasis added)).  To the extent that Plaintiff's claims predate his acceptance of the version of the Subscriber Agreement in effect at the time of his recent order for promotional Internet pricing (January 31, 2018), those claims too would fall within the ambit of the arbitration provision, which defines "Dispute" to include "claims that arose before this or any prior Agreement." *Id.*  And Plaintiff otherwise would be bound to arbitrate those claims by virtue of the arbitration provisions in his prior Subscriber Agreements, including the Subscriber Agreement that he received and accepted in 2017. *See id.*, Ex. 1, § 13; *id.*, Ex. 2, § 13; *id.*, Ex. 3, § 13; *id.*, Ex. 4 at 6, § 13.

Given the FAA's strong presumption in favor of arbitration, it cannot reasonably be disputed that the claims asserted by Plaintiff are arbitrable.  Indeed, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *accord Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 938 (9th Cir. 2013); *Westinghouse Hanford Co. v. Hanford Atomic Metal Trades Council*, 940 F.2d 513, 517 (9th Cir. 1991) (recognizing the presumption in favor of arbitration applies with "particular force where the arbitration clause is phrased in broad and general terms").  This presumption requires arbitration of Plaintiff's claims here. *See, e.g.*, *Friedman v. Mercedes Benz USA LLC*, No. 12-7204, 2013 WL 12086785, at *4 (C.D. Cal. Jan. 31, 2013) (granting motion to compel arbitration of plaintiffs' claims under the UCL, FAL, and CLRA, which alleged false advertising of Mercedes features, where the vehicle lease required arbitration of "[a]ny claim or dispute, whether in contract, tort or otherwise . . . which arises out of or relates to . . . this lease or any resulting transaction or relationship arising out of this lease"); *Brown v. DIRECTV, LLC*, No. 12-8382, 2013 WL 3273811, at *11 (C.D. Cal. June 26, 2013) (finding UCL claim fell within the scope of arbitration clause contained in DIRECTV's terms and conditions of service).

**D.     Plaintiff Should Be Compelled to Comply with His Arbitration Agreement, and This Action Should Be Stayed Pending Any Arbitration Proceeding.**

Because the arbitration agreement in the Subscriber Agreement is governed by the FAA, Plaintiff agreed to be bound by it, and his claims are within its scope, this Court should (1) compel

1   Plaintiff to comply with the arbitration clause (*e.g.*, by arbitrating or dismissing his claims); and

2   (2) stay the action pending the outcome of any separate proceeding that Plaintiff properly

3   commences.  *See* 9 U.S.C. §§ 3, 4; *see also Moses H. Cone*, 460 U.S. at 22 ("[The FAA] provides

4   two parallel devices for enforcing an arbitration agreement:  a stay of litigation in any case raising a

5   dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration,

6   § 4."); *Dean Witter Reynolds*, 470 U.S. at 218 ("By its terms, the [FAA] leaves no place for the

7   exercise of discretion by a district court, but instead mandates that district courts *shall* direct the

8   parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."

9   (emphasis in original)); *Chiron Corp*, 207 F.3d at 1131 ("The dispute . . . falls within the parties'

10  agreement to arbitrate.  Accordingly, as the FAA 'leaves no place for the exercise of discretion by a

11  district court . . . [,]' the district court was correct in finding that the dispute is arbitrable." (quoting

12  *Dean Witter*, 470 U.S. at 218)).

13                                          **IV.**

14                                    **CONCLUSION**

15          For the foregoing reasons, Comcast respectfully requests that the Court grant its motion to

16  compel individual arbitration and stay this action.

17

18  Dated: March 30, 2018                 DRINKER BIDDLE & REATH LLP

19                                        By: /s/ Michael J. Stortz

20                                            Michael J. Stortz
                                              Matthew J. Adler

21                                            Seamus C. Duffy
                                              Michael W. McTigue Jr.
22                                            Meredith C. Slawe

23                                        Attorneys for Defendant
                                          COMCAST CABLE COMMUNICATIONS, LLC
24

25

26

27

28

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

91624664.9
DEFENDANT'S NOTICE OF MOTION AND MOTION
TO COMPEL INDIVIDUAL ARBITRATION                - 11 -                CASE NO. 3:18cv1829