1  Ray E. Gallo (SBN 158903)
   rgallo@gallo.law
2  Dominic Valerian (SBN 240001)
   dvalerian@gallo.law
3  GALLO LLP
4  1604 Solano Ave., Suite B
   Albany, CA 94707
5  Phone: 415.257.8800

6  Hank Bates (SBN 167688)
7  hbates@cbplaw.com
   CARNEY, BATES & PULLIAM, PLLC
8  519 West 7th Street
   Little Rock, AR 72201
9  Phone: 501.312.8500

10 Attorneys for Plaintiff
11 Brandon Hodges

12                    UNITED STATES DISTRICT COURT
13                   NORTHERN DISTRICT OF CALIFORNIA
14                            OAKLAND DIVISION

| | |
|---|---|
| BRANDON HODGES, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COMCAST CABLE COMMUNICATIONS, LLC, a Delaware limited liability company; and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 3:18-cv-01829-HSG<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY LITIGATION**<br><br>Date: TBD<br>Time: TBD<br>Ctrm: 2—4th Floor<br>Judge: Haywood S. Gilliam, Jr. |

# TABLE OF CONTENTS

1. Introduction ..................................................................................................................... 5
2. Background ..................................................................................................................... 6
3. Argument ........................................................................................................................ 9
   A. The California Supreme Court's holding in *McGill v. Citibank, N.A.* prohibits consumer contracts from waiving the right to seek public injunctive relief in any forum. .................... 9
   B. The 2018 Subscriber Agreement's Arbitration Provision waives Plaintiff's right to seek public injunctive relief in any forum, rendering it unenforceable under *McGill*. ............... 12
   C. Plaintiff's complaint seeks public injunctive relief. ............................................................ 13
   D. The FAA does not preempt the McGill rule. ....................................................................... 16
      (1) The McGill rule is a generally applicable contract defense. ........................................ 17
      (2) The McGill rule does not conflict with the FAA's purposes. ...................................... 17
   E. The Arbitration Provision precludes severance of the unenforceable public injunctive relief waiver, rendering the entire Arbitration Provision unenforceable. ............................ 19
4. Conclusion ..................................................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013) .............................................................. 18

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ......................................................... 9, 15

*Blair v. Rent-A-Center, Inc.*,
    No. C 17-02335 WHA, 2017 WL 4805577 (N.D. Cal. Oct. 25, 2017) ............. 10, 11, 12, 15, 16

*Broughton v. Cigna Healthplans*, 21 Cal. 4th 1066 (1999) ................................................................ 9

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ..................................................................................... 13

*Chalk v. T–Mobile USA, Inc.*, 560 F.3d 1087 (9th Cir. 2009) ......................................................... 18

*Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303 (2003) ..................................................... 9, 14

*Hemmings v. Tidyman's Inc.*, 285 F.3d 1174 (9th Cir. 2002) .......................................................... 10

*Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348 (2014) ............................................... 16

*Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052 (9th Cir. 2013) ................................................ 14, 15

*McArdle v. AT&T Mobility LLC*,
    No. 09-CV-01117-CW, 2017 WL 4354998 (N.D. Cal. Oct. 2, 2017 ...................... 10, 15, 16, 17

*McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017) .................................. 4, 8, 9, 10, 12, 13, 14, 15, 16

*Parker v. Time Warner Entm't Co., L.P.*,
    No. 98 CV 4265 (ERK), 1999 WL 1132463 (E.D.N.Y. Nov. 8, 1999).................................... 13

*Roberts v. AT&T Mobility LLC*,
    No. 15-CV-03418-EMC, 2018 WL 1317346 (N.D. Cal. Mar. 14, 2018)................ 11, 15, 16, 17

*Sakkab v. Luxottica Retail N. Am.*, 803 F.3d 425 (9th Cir. 2015)....................................... 15, 16, 17

*Securitas Sec. Servs. USA, Inc. v. Superior Court*, 234 Cal. App. 4th 1109 (2015)...................... 18

*Tillage v. Comcast Corp.*, No. 3:17-cv-06477-VC (N.D. Cal. Feb. 15, 2018) ......... 5, 10, 12, 15, 18

*Wright v. Sirius XM Radio Inc.*,
    No. SACV1601688JVSJCGX, 2017 WL 4676580 (C.D. Cal. June 1, 2017) ........................... 15

## Statutes

47 U.S.C. § 551 ................................................................................................................................... 4

47 U.S.C. § 551(a)(1)(C) .................................................................................................................... 6

47 U.S.C. § 551(d) .............................................................................................................................. 7

47 U.S.C. § 551(f)(3) ........................................................................................................................ 13

9 U.S.C. § 2 ....................................................................................................................................... 16

Cal Civ Code § 1812.620 .................................................................................................................. 12

Cal. Bus. & Prof. Code § 17200 ......................................................................................................... 4

Cal. Bus. & Prof. Code § 17500 ......................................................................................................... 8

Cal. Civ. Code § 1812.621 ................................................................................................................ 13

Cal. Civ. Code § 3513 .................................................................................................................. 9, 16

Cal. Lab. Code. § 2698 .................................................................................................................. 16
Cal. Pen. Code § 630..................................................................................................................4, 13
Cal. Pen. Code § 637.2(b) ............................................................................................................. 13
Cal. Pen. Code § 637.5(a)(1)........................................................................................................... 7
Cal. Pen. Code § 637.5(d) ............................................................................................................... 7

**Statement of Issues to Be Decided**

1. Does the parties' arbitration agreement impermissibly waive Plaintiff's right to seek public injunctive relief in any forum under the rule announced by the California Supreme Court in *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017)?

2. Does Plaintiff's Complaint seek public injunctive relief within the scope of *McGill*?

3. Is the *McGill* rule preempted by the Federal Arbitration Act (should Defendant argue preemption)?

4. Does the non-severability clause in the paragraph containing the unenforceable waiver render the entire arbitration agreement unenforceable?

**Memorandum of Points and Authorities**

**1. Introduction**

The Motion to Compel Individual Arbitration and Stay Litigation ("Motion") brought by Defendant Comcast Cable Communications, LLC ("Comcast") should be denied in whole. The operative January 2018 Comcast Agreement for Residential Services (the "2018 Subscriber Agreement")[1] contains a waiver of Plaintiff's right to seek public injunctive relief in any forum, which is unenforceable under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017). The 2018 Subscriber Agreement also contains a non-severability clause that provides that the collective relief waiver "IS AN ESSENTIAL PART OF THIS ARBITRATION PROVISION AND CANNOT BE SEVERED FROM IT." 2018 Agreement § 13.h. As discussed in detail below, Plaintiff seeks public injunctive pursuant to Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"); the California Invasion of Privacy Act, Cal. Pen. Code §§ 630, *et seq.* ("CIPA"); and 47 U.S.C. § 551 (the "Cable Act"). Since the unlawful waiver is not severable, the entire arbitration agreement is unenforceable and this case must proceed in court.[2]

---

[1] A copy of the 2018 Subscriber Agreement is attached as part of the Wade Declaration's Exhibit 6 (ECF No. 8-6) starting at page 11. Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents unless otherwise indicated.

[2] While the Motion is based upon the 2018 Subscriber Agreement, the unlawful waiver of public injunctive relief and the non-severability provisions are also present in the prior versions of the

Comcast lost on this precise issue two months ago in *Tillage v. Comcast Corp.*, another consumer class action defended by the same counsel, where Judge Chhabria relied on *McGill* to deny Comcast's motion to compel arbitration under a materially identical 2017 Subscriber Agreement.³ *See* Order Denying Mot. to Compel Arb., *Tillage v. Comcast Corp.*, No. 3:17-cv-06477-VC (N.D. Cal. Feb. 15, 2018) (ECF No. 37). Nonetheless, Comcast's moving papers do not address or mention this dispositive issue. Plaintiff therefore attempts to address Comcast's likely arguments, but reserves the right to request leave to file a sur-reply.

Because Plaintiff seeks public injunctive relief under the UCL, CIPA, and the Cable Act, because the 2018 Subscriber Agreement's waiver of a customer's right to seek public injunctive relief is unenforceable under *McGill*, and because that waiver is not severable from the remainder of the Arbitration Provision in the 2018 Subscriber Agreement (by that agreement's express terms), Comcast's entire Arbitration Provision is unenforceable, and the Court should deny Comcast's Motion.

## 2. Background

Plaintiff Brandon Hodges is a former Comcast cable television subscriber and current Comcast internet subscriber. Wade Decl. ¶¶ 4-5, 16. Comcast has provided Plaintiff with at least five versions of its Agreement for Residential Services over the course of his subscriptions. Wade Decl. ¶¶ 7, 12, 13, 15, 16. Most recently, on January 31, 2018, Comcast emailed Plaintiff an order confirmation containing a link to the 2018 Subscriber Agreement. *Id.* ¶ 17.

The 2018 Subscriber Agreement contains an Arbitration Provision at Section 13 that requires the parties to arbitrate "[a]ny Dispute involving you and us," broadly defined, including "claims that arose before this or any prior Agreement." *Id.* § 13.b. The Arbitration

---

Subscriber Agreement Plaintiff allegedly entered.

³ Copies of the *Tillage* order denying Comcast's Motion to Compel Arbitration and the 2017 Subscriber Agreement at-issue in *Tillage* are attached as Exhibits A and B, respectively, to the Valerian Declaration. Valerian Decl. ¶¶ 2-3. *Tillage's* 2017 Subscriber Agreement contains the exact same injunctive relief waiver and non-severability provision as the 2018 Subscriber Agreement at issue here. *See Tillage* 2017 Subscriber Agreement § 13.h; 2018 Subscriber Agreement § 13.h.

Provision excludes "DISPUTES RELATING TO THE SCOPE, VALIDITY, OR ENFORCEABILITY OF THIS ARBITRATION PROVISION" from arbitration. *Id*. § 13.c. The Arbitration Provision includes a "Waiver of Class Actions and Collective Relief" that provides:

> **h. Waiver of Class Actions and Collective Relief.** THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED OR LITIGATED ON A CLASS ACTION, JOINT OR CONSOLIDATED BASIS OR ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC (SUCH AS A PRIVATE ATTORNEY GENERAL), OTHER SUBSCRIBERS, OR OTHER PERSONS. THE ARBITRATOR MAY AWARD RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF WARRANTED BY THAT INDIVIDUAL PARTY'S CLAIM. THE ARBITRATOR MAY NOT AWARD RELIEF FOR OR AGAINST ANYONE WHO IS NOT A PARTY. THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING. THIS WAIVER OF CLASS ACTIONS AND COLLECTIVE RELIEF IS AN ESSENTIAL PART OF THIS ARBITRATION PROVISION AND CANNOT BE SEVERED FROM IT. THE REMAINING PORTIONS OF THIS ARBITRATION PROVISION ARE NOT ESSENTIAL PARTS OF THIS ARBITRATION PROVISION AND CAN BE SEVERED FROM IT BY A COURT OF COMPETENT JURISDICTION.

2018 Subscriber Agreement § 13.h.

Plaintiff filed this class action in Alameda County Superior Court on February 19, 2018.[4] The Complaint alleges that Comcast violated:

(1) the Cable Act by: **(a)** failing to clearly and conspicuously notify subscribers of the period during which it maintains their personally identifiable information ("PII") in its annual privacy notices in violation of 47 U.S.C. § 551(a)(1)(C) (Compl. ¶ 34), **(b)** collecting subscribers' personally identifiable video activity data for advertising purposes through the cable system without prior written or electronic consent in violation of § 551(b) (Compl. ¶ 36), and **(c)** failing to provide Plaintiff with access to all PII concerning Plaintiff in its possession upon Plaintiff's request in violation of § 551(d) (Compl. ¶ 39);

---

[4] A copy of Plaintiff's Complaint is attached as part of Exhibit A to Defendant's Notice of Removal. *See* Notice of Removal (ECF No. 1) at 12.

(2) CIPA by: **(a)** using an electronic device—namely subscribers' cable boxes—to record, transmit, and observe events that took place inside subscribers' residences, including what they watched and when they watched it, without express written consent in violation of Cal. Pen. Code § 637.5(a)(1) (Compl. ¶ 41), and **(b)** failing to provide Plaintiff with access to all individually identifiable subscriber information about him upon his request in violation of Cal. Pen. Code § 637.5(d) (Compl. ¶ 43); and

(3) the UCL's unlawful prong by committing the foregoing Cable Act and CIPA violations. Compl. ¶ 46.

Plaintiff brings his claims for failure to provide access to his personally and individually identifiable information upon request—47 U.S.C. § 551(d) and Cal. Pen. Code § 637.5(d)—for himself only. Compl. pp. 20-21. Plaintiff brings his other claims for himself and all others in California with a residential Comcast cable television subscription within the applicable limitations period(s). *Id*. ¶ 25, pp. 20-21.

Plaintiff seeks, *inter alia*, "statewide public injunctive relief" requiring Comcast to:

   a. clearly and conspicuously notify cable subscribers in writing, at the requisite times, of the period during which it maintains their PII, including video activity data and demographic data (under the Cable Act and UCL);

   b. stop using its cable system to collect cable subscribers' personally identifiable video activity data for advertising purposes without their prior written or electronic consent (under the Cable Act and UCL);

   c. destroy all personally identifiable video activity data collected from cable subscribers for advertising purposes without prior written or electronic consent and any information derived in whole or part from such data (under the Cable Act and UCL);

   d. change its procedures to provide cable subscribers who request access to their PII with access to all such PII in Comcast's possession, including video activity data and demographic data (under the Cable Act and UCL);

   e. stop using its cable system to record, transmit, or observe video activity data about cable subscribers without their express written consent (under CIPA and the UCL);

   f. destroy all video activity data collected from cable subscribers through Comcast's cable system without their express written consent (under CIPA and the UCL);

g. provide cable subscribers who request access to their individually identifiable subscriber information with access to all such information gathered by Comcast within 30 days, including video activity data (under CIPA and the UCL).

Compl. pp. 22:21-23:17.

Comcast removed this case on March 23, 2018. *See* Notice of Removal (ECF No. 1). On March 30, 2018, Comcast moved to compel arbitration based on the arbitration agreement in the 2018 Subscriber Agreement. Mot. at 14:14-14:16, 15:2-15:9.

**3. Argument**

**A. The California Supreme Court's holding in *McGill v. Citibank, N.A.* prohibits consumer contracts from waiving the right to seek public injunctive relief in any forum.**

The Arbitration Provision in the 2018 Subscriber Agreement expressly prohibits a subscriber from seeking public injunctive relief in any forum by: (1) requiring that *any* dispute between the parties be brought in arbitration (*id*. at § 13.b), and (2) limiting any arbitral award to individual relief only (*id.* at § 13.h). This type of waiver was ruled unenforceable under California law in *McGill v. Citibank, N.A.*, in which the California Supreme Court held that a provision in a pre-dispute arbitration agreement that waives the right to seek public injunctive relief in any forum is contrary to California public policy and thus unenforceable (the "*McGill* rule"). 2 Cal. 5th at 951-952.

In *McGill*, the plaintiff brought a putative class action against Citibank asserting, *inter alia*, violations of the UCL, the Consumers Legal Remedies Act ("CLRA") (Cal. Civ. Code §§ 1750 *et seq.*), and the False Advertising Law ("FAL") (Cal. Bus. & Prof. Code § 17500) arising from Citibank's "credit protector" program. *Id.* at 952-954. Citibank moved to compel arbitration based on a provision in its customer agreement that encompassed all claims and that limited arbitral awards to only individual relief, reading in pertinent part:

> Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court.

*Id.* at 952. The trial court granted Citibank's motion, except with regard to plaintiff's claims seeking injunctive relief under the UCL, CLRA, and FAL, relying on the holdings in *Broughton v. Cigna Healthplans*, 21 Cal. 4th 1066 (1999) and *Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303 (2003) for the rule that agreements to arbitrate claims seeking public injunctive relief are unenforceable under California law. 2 Cal. 5th at 953. The Court of Appeal reversed and remanded, holding that the *Broughton-Cruz* rule was preempted by the Federal Arbitration Act ("FAA") pursuant to the Supreme Court's then-recent holding in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). 2 Cal. 5th at 953.

In overturning the Court of Appeal's ruling, the California Supreme Court found the *Broughton-Cruz* Rule did not apply because Citibank's arbitration provision did not require arbitration of claims seeking public injunctive relief. *Id.* at 956. Rather, Citibank's arbitration provision purported to preclude plaintiff from seeking public injunctive relief in any forum. *Id.* The California Supreme Court held that such a waiver violates California law prohibiting the waiver of a law established for a public reason. *Id.* at 961 (quoting Cal. Civ. Code § 3513) ("Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement."). The court explained that "the public injunctive relief available under the UCL, the CLRA, and the [FAL], as discussed in *Broughton* and *Cruz*, is primarily 'for the benefit of the general public.'" Therefore, "the waiver in a predispute arbitration agreement of the right to seek public injunctive relief under these statutes would seriously compromise the public purposes the statutes were intended to serve" and cannot be enforced. *Id.*

The *McGill* court went on to hold that the FAA does not preempt its rule prohibiting the waiver of the right to seek public injunctive relief in any forum. *Id.* at 961-966. Instead, "[t]he contract defense at issue here—'a law established for a public reason cannot be contravened by a private agreement' (Civ. Code, § 3513)—is a generally applicable contract defense, *i.e.*, it is a ground under California law for revoking *any* contract." *Id.* at 962 (emphasis added). Critically, "[i]t is not a defense that applies only to arbitration or that derives its meaning from the fact that an agreement to arbitrate is at issue. [Such a] provision in any contract—even a

contract that has no arbitration provision—that purports to waive, in all fora, the statutory right to seek public injunctive relief…is invalid and unenforceable under California law." *Id.*

Numerous judges in this district have relied on *McGill's* binding interpretation of California law to invalidate arbitration agreements like the one in the 2018 Subscriber Agreement. *See McArdle v. AT&T Mobility LLC*, No. 09-CV-01117-CW, 2017 WL 4354998 at *3 (N.D. Cal. Oct. 2, 2017) (citing *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002) ("McGill's holding that predispute waivers of public injunctive relief are contrary to California public policy is binding on this Court.")

In a February decision that Comcast fails to address in its moving papers, Judge Chhabria denied Comcast's own motion to compel arbitration under identical circumstances in the putative class action *Tillage v. Comcast*, No. 3:17-cv-06477-VC (N.D. Cal.). The *Tillage* complaint alleges bait-and-switch marketing practices by Comcast in the course of selling its services to California consumers. *See* Complaint (Exh. A to Notice of Removal), *Tillage,* No. 3:17-cv-06477-VC (Nov. 7, 2017) (ECF No. 1). The *Tillage* Plaintiffs seek classwide, public injunctive relief pursuant to the UCL, CLRA, and FAL. *Id*. Finding that Comcast's 2017 Subscriber Agreement—which, as discussed above, is materially identical to the 2018 Subscriber Agreement at issue here—"waives an individual's right to bring a public injunctive relief claim in any forum," Judge Chhabria denied Comcast's motion to compel arbitration, holding that "[s]uch a waiver is unenforceable under state law." Order Denying Motion to Compel  at 1-2, *Tillage,* 3:17-cv-06477-VC (citing *McGill*, 2 Cal. 5th at 951; *Blair v. Rent-A-Center, Inc.*, No. C 17-02335 WHA, 2017 WL 4805577 at *2-6 (N.D. Cal. Oct. 25, 2017); *McArdle*, 2017 WL 4354998 at *3-4). Further, Judge Chhabria cited the fact that the Subscriber Agreement "includes language that invalidates the entire arbitration clause if the waiver is invalidated" as part of his analysis and reasoning in denying Comcast's motion in its entirety. *Id.* at 2.

Judges Wilkin, Alsup, and Chen have also limited or invalidated arbitration agreements based on *McGill* in consumer class actions.[5] *See McArdle*, 2017 WL 4354998 (finding

---
[5] These decisions are now on appeal to the Ninth Circuit.

**PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL ARBITRATION**
3:18-cv-01829-HSG

arbitration provision stating "[t]he arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim" to be an unenforceable waiver of public injunctive relief under *McGill,* which rendered the entire arbitration provision void by its own terms in a deceptive advertising class action against AT&T); *Blair*, 2017 WL 4805577 at *4-5 (finding arbitration agreement stating that the arbitration "'shall be conducted on an individual basis' and that '[t]here will be no right or authority for any dispute to be brought, heard, or arbitrated as a class, collective, mass, private attorney general, or representative action'" to be an unenforceable waiver of public injunctive relief under *McGill* and consequently denying motion to compel arbitration with respect to, *inter alia*, plaintiff's § 17200 and CLRA claims per the agreement's severance clause in a class action claiming Rent-A-Center set prices in excess of the maximum installment payment rates allowable under California law); *Roberts v. AT&T Mobility LLC*, No. 15-CV-03418-EMC, 2018 WL 1317346 (N.D. Cal. Mar. 14, 2018) (finding AT&T's arbitration agreement impermissibly waived public injunctive relief under *McGill* and invalidating the entire arbitration clause on the same basis as Judge Wilkin in *McCardle* in another false advertising class action against AT&T).

**B. The 2018 Subscriber Agreement's Arbitration Provision waives Plaintiff's right to seek public injunctive relief in any forum, rendering it unenforceable under *McGill*.**

The 2018 Subscriber Agreement is the operative agreement between the parties because it expressly supersedes prior agreements and the Arbitration Provision's scope expressly includes "claims that arose before this or any prior Agreement." 2018 Subscriber Agreement §§ 15.a and 13.b. The validity and enforceability of 2018 Subscriber Agreement's Arbitration Provision are issues for the Court because the Arbitration Provision's scope expressly excludes "DISPUTES RELATING TO THE SCOPE, VALIDITY, OR ENFORCEABILITY OF THIS ARBITRATION PROVISION" from arbitration. *Id.* § 13.c.

The 2018 Subscriber Agreement purports to waive the arbitrator's ability to award public injunctive relief through the following terms: (1) "THE ARBITRATOR MAY AWARD RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND

ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF WARRANTED BY THAT INDIVIDUAL PARTY'S CLAIM;" and (2) "THE ARBITRATOR MAY NOT AWARD RELIEF FOR OR AGAINST ANYONE WHO IS NOT A PARTY." *Id.* § 13.h.

In combination with § 13.b's provision that "any dispute," broadly defined, shall be arbitrated, this constitutes a waiver of public injunctive relief in any forum that violates the *McGill* rule. *See* Order Denying Mot. to Compel Arb., *Tillage*, No. 3:17-cv-06477-VC at *1 (finding Comcast's materially identical 2017 Subscriber Agreement "waives an individual's right to bring a public injunctive relief claim in any forum"); *Blair*, 2017 WL 4805577 at *5 (agreement providing that arbitration "shall be conducted on an individual basis," that the arbitrator was prohibited from "award[ing] relief that would affect … account holders other than [the customer]," and that "[t]here will be no right or authority for any dispute to be brought, heard, or arbitrated as a class, collective, mass, private attorney general, or representative action" impermissibly precluded seeking public injunctive relief).

### C. Plaintiff's complaint seeks public injunctive relief.

Under *McGill,* where a plaintiff's claims (1) arise from a consumer protection statute, and (2) seek injunctive relief related to ongoing conduct (and accordingly where an injunction will impact the public prospectively), those claims seek public injunctive relief. 2 Cal. 5th at 955. *McGill* confirmed that public injunctive relief is available under the UCL, the FAL, and the CLRA. 2 Cal. 5th at 955, 961. In reaching this conclusion, the *McGill* court noted that each of these statutes serves a public purpose and authorizes injunctive relief. *Id.* at 954-955. The court also explained that injunctive relief awarded under these statutes generally "has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *Id.* at 955.

In *Blair v. Rent-A-Center, Inc.*, Judge Alsup applied *McGill* to find that public injunctive relief is an available remedy under the Karnette Rental-Purchase Act (Cal. Civ. Code §§ 1812.620, *et seq*.). *Blair*, 2017 WL 4805577 at *3-4. Judge Alsup explained:

> Like the laws considered in *McGill*, the Karenette Rental-Purchase Act has an enumerated public purpose—to 'ensure that consumers are protected from misrepresentations and unfair dealings' and to 'prohibit unfair or

> unconscionable conduct toward consumers in connection with rental-purchase transactions.' *See* Cal. Civ. Code § 1812.621….[Further], like the statutes in *McGill*, any prospective injunctive relief herein under the Karnette Rental-Purchase Act will accrue to the public at large and will affect Blair only incidentally as she has already been harmed by the allegedly wrongful practice. *See McGill*, 2 Cal. 5th at 955. Based on the foregoing, therefore, Blair is within her rights to seek public injunctive relief under the Karnette Rental-Purchase Act."

*Id.*

Consonant with *McGill,* Plaintiff seeks "statewide public injunctive" relief under the UCL, the Cable Act, and CIPA. Compl. pp. 22:21-23:17. *McGill* already found public injunctive relief is available under the UCL and the Court should find it is also available under CIPA and the Cable Act.

Like the laws considered in *McGill*, CIPA and the Cable Act both serve a public purpose. CIPA's enumerated purpose is "to protect the privacy of the people of [California]." Cal. Pen. Code § 630. The Cable Act serves the same purpose for the country—its title ("Protection of subscriber privacy"), content, and legislative history make clear that its primary purpose is protecting consumers from invasions of privacy by cable operators. *See, e.g., Parker v. Time Warner Entm't Co., L.P.*, No. 98 CV 4265 (ERK), 1999 WL 1132463 at *2 (E.D.N.Y. Nov. 8, 1999) ("The Cable Act's legislative history reveals a concern to protect consumers from invasions of privacy by cable operators.") (citing H.R.Rep. No. 98–934, at 29–30 (1984), reprinted in 1984 U.S.C.C.A.N. 4655, 4666–67).

Both CIPA and the Cable Act permit injunctive relief. CIPA does so expressly. *See* Cal. Pen. Code § 637.2(b). The Cable Act does so by providing that its enumerated remedies "shall be in addition to any other lawful remedy available to a cable subscriber." 47 U.S.C. § 551(f)(3); *see also Califano v. Yamasaki*, 442 U.S. 682, 705 (1979) ("Absent the clearest command to the contrary from Congress, federal courts retain their equitable powers to issue injunctions in suits over which they have jurisdiction."). And injunctive relief awarded for violations of the Cable Act and CIPA will primarily benefit the public (rather than the plaintiff) because, as here, cable operators' privacy violations are widespread, systemic offenses that threaten ongoing injury to the general public. Comcast reportedly had around 2.2 million cable

subscribers in California as of July 2014[6] and its 2017 Annual Report shows that it has a substantial cable distribution footprint in California and at least 1.25 million total customers in the state. *See* Valerian Decl. ¶ 4, Exh. C.

Plaintiff seeks the type of public injunctive relief *McGill* addressed. Plaintiff alleges that Comcast's privacy practices violate the Cable Act, CIPA, and the UCL in various respects (Compl. ¶¶ 34, 36, 39, 41, 43, 46) and that all of Comcast's alleged unlawful conduct is continuing. Compl. ¶ 18. For relief, Plaintiff seeks specific changes to Comcast's policies and practices that are aimed primarily at stopping *future* statutory violations from occurring (rather than remedying past violations). Compl. pp. 22:21-23:17. The injunctive relief Plaintiff seeks here would not only benefit Comcast's current California cable television subscribers (who are in the putative class), but all of Comcast's prospective California cable television subscribers (who are not). This is just like the public injunctive relief sought in *McGill* and *Cruz v. PacifiCare Health Sys., Inc.* that would similarly benefit both defendant's existing customers (in the putative class) and defendant's prospective customers (outside the class). *See McGill*, 2 Cal. 5th at 953, 956-957 (plaintiff sought public injunctive relief even though plaintiff brought her claims on behalf of a class); *Cruz*, 30 Cal. 4th 303, 308, 315-316 (2003) (plaintiff sought public injunctive relief even though plaintiff brought his claims on behalf of a class of 1.6 million of defendant's current customers).

The ongoing nature of Comcast's misconduct and the large number of Californians that stand to benefit from the requested injunctive relief distinguishes this case from *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1060-61 (9th Cir. 2013). There, the Ninth Circuit held that a putative class of 120 former flight-school students seeking to enjoin the defendant bank from reporting loan defaults, enforcing promissory notes against them, and disbursing loans to sellers without certain statutorily required language in their contracts did not seek public

---

[6] *See* Connor Grubaugh, *Comcast-Time Warner Merger: Dramatic Impact on California*, Capitol Weekly, July 3, 2014 ("Comcast currently retains around 2.2 million California customers, or about 40 percent of the state cable market."), available at http://greenlining.org/issues/2014/comcast-time-warner-merger-dramatic-impact-california/ as of April 13, 2018.

injunctive relief. Critically, the relief sought "relat[ed] only to past harms suffered by the members of the limited putative class," as the plaintiffs expressly conceded that the defendant "had completely withdrawn from the [challenged conduct]," and plaintiffs "[did] not allege that the bank is engaging in other comparable transactions [moving forward]." *Id.* at 1061.

Similarly, in *Wright v. Sirius XM Radio Inc.*, No. SACV1601688JVSJCGX, 2017 WL 4676580 at *9-10, n.2 (C.D. Cal. June 1, 2017), the court found plaintiff only sought private relief where three out of plaintiff's four requests for injunctive relief only remedied past wrongs against putative class members and the fourth contained only "vague, generalized allegations."

Because Plaintiff's claims arise from consumer protections statutes and seek prospective injunctive relief affecting the public at large, he seeks public injunctive relief under *McGill*, and the Arbitration Provision in the 2018 Subscriber Agreement (which prohibits such relief) is unenforceable. *McGill,* 2 Cal. 5th at 955, 961; *Blair*, 2017 WL 4805577 at *4 (when claim pursuant to a consumer protection statute "has an enumerated public purpose" and "any prospective injunctive relief [sought by the named plaintiff] will accrue to the public at large and will affect [plaintiff] only incidentally as she has already been harmed by the allegedly wrongful practice," the claim is for public injunctive relief).

**D. The FAA does not preempt the McGill rule.**

This Court should reject any contention that the Federal Arbitration Act preempts the *McGill* rule—as has every other decision addressing the issue that Plaintiff has found. *See McGill*, 2 Cal. 5th at 961-66; *Blair*, 2017 WL 4805577 at *4-5; *McArdle*, 2017 WL 4354998 at *3-4; Order Denying Mot. to Compel Arb., *Tillage v. Comcast Corp.*, No. 3:17-cv-06477-VC at *2; *Roberts*, 2018 WL 1317346 at *6-7.

To assess whether the FAA preempts a state law rule, the Ninth Circuit follows a two-step approach based on the Supreme Court's analysis in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). *See Sakkab v. Luxottica Retail N. Am.*, 803 F.3d 425, 431-432 (9th Cir. 2015). First, the court assesses whether the state law rule falls within the plain language of the saving clause of § 2 of the FAA, which permits arbitration agreements to be declared

unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 339; *see also Sakkab*, 803 F.3d at 432. Second, even if the state law rule is "generally applicable," it is preempted if it conflicts the FAA's purposes, applying "ordinary conflict preemption principles." *Sakkab*, 803 F.3d at 432-433.

### (1) The McGill rule is a generally applicable contract defense.

The *McGill* rule and the Civil Code provision underlying it—"a law established for a public reason cannot be contravened by a private agreement" (Cal. Civ. Code § 3513)—are generally applicable contract defenses. *See McGill*, 2 Cal. 5th at 962; *McArdle*, 2017 WL 4354998 at *4; *Blair*, 2017 WL 4805577 at *4. They do not apply only to arbitration or derive their meaning from the fact that an agreement to arbitrate is at issue. *McGill*, 2 Cal. 5th at 962. Rather, a provision in any contract that purports to waive the right to seek public injunctive relief in any forum is invalid under California law. *Id.* Consequently, the *McGill* rule falls within the plain language of § 2's saving clause and is not preempted under the first prong of the analysis.

### (2) The McGill rule does not conflict with the FAA's purposes.

In *McArdle* and *Roberts,* Judge Wilken and Judge Chen, respectively, concluded that the *McGill* rule does not conflict with the FAA's purposes under the Ninth Circuit's reasoning in *Sakkab. See McArdle*, 2017 WL 4354998 at *4; *Roberts*, 2018 WL 1317346 at *6. In *Sakkab*, "the Ninth Circuit held that the FAA does not preempt California's rule, announced in *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348 (2014), barring the predispute waiver of representative claims under the Private Attorneys General Act of 2004 (PAGA), Cal. Lab. Code. § 2698 *et seq.*" *McArdle*, 2017 WL 4354998 at *3. In concluding the *Iskanian* rule does not conflict with the FAA's purposes, the Ninth Circuit rejected several preemption arguments that defendants have also raised against the *McGill* rule.

First, the *Sakkab* court found the *Iskanian* rule does not conflict with the FAA's purpose of overcoming judicial hostility to arbitration because it does not prohibit the arbitration of any type of claim but provides only that PAGA claims may not be waived outright. *Sakkab*, 803 F.3d at 434.

Second, the *Sakkab* court found the "*Iskanian* rule … does not diminish parties' freedom to select informal arbitration procedures." *Id*. at 435. In *Concepcion*, the Supreme Court identified parties' freedom to select informal procedures as one of the benefits of arbitration interfered with by the *Discover Bank* rule (which invalidated class action waivers in adhesion contracts involving predictably small damages where the consumer alleges a fraudulent scheme). *Concepcion*, 563 U.S. at 348-349. *Sakkab* explained that PAGA actions do not require the same procedural formality as class actions because class procedures designed to protect absent class members' due process rights do not apply in PAGA actions. *Sakkab*, 803 F.3d at 436.

Third, the "*Sakkab* court concluded that the potential high stakes of a claim, alone, do not interfere with arbitration because the parties are free to contract for whatever formal or informal procedures they choose to handle the claim." *McArdle,* 2017 WL 4354998 at *4 (citing *Sakkab*, 803 F.3d at 437-439).

Fourth, the *Sakkab* court found that potential complexity does not interfere with arbitration where "the complexity flows from the substance of the claim itself, rather than any procedures required to adjudicate it (as with class actions)." *Sakkab*, 803 F.3d at 438.

Given the substantial similarities between PAGA claims and public injunctive relief claims, Judges Wilken and Chen concluded that the Ninth Circuit's preemption analysis of the *Iskanian* rule in *Sakkab* applies equally to the *McGill* rule, so that it is not preempted either. *McArdle,* 2017 WL 4354998 at *3-4; *Roberts*, 2018 WL 1317346 at *6-7.

In sum, the *McGill* rule does not conflict with the FAA "because it leaves parties free to adopt the kinds of informal procedures normally available in arbitration." *Sakkab*, 803 F.3d at 439. It only prohibits them from opting out of the statutory right to public injunctive relief altogether.

### E. The Arbitration Provision precludes severance of the unenforceable public injunctive relief waiver, rendering the entire Arbitration Provision unenforceable.

"[A]rbitration is a matter of contract" and "courts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). The Waiver of Class Actions and Collective Relief in the 2018 Subscriber Agreement's Arbitration Provision provides:

> THIS WAIVER OF CLASS ACTIONS AND COLLECTIVE RELIEF IS AN ESSENTIAL PART OF THIS ARBITRATION PROVISION AND CANNOT BE SEVERED FROM IT. THE REMAINING PORTIONS OF THIS ARBITRATION PROVISION ARE NOT ESSENTIAL PARTS OF THIS ARBITRATION PROVISION AND CAN BE SEVERED FROM IT BY A COURT OF COMPETENT JURISDICTION.

2018 Subscriber Agreement § 13.h. Accordingly, the unenforceable Waiver of Class Actions and Collective Relief cannot be severed to save the remainder of the Arbitration Provision. The entire Arbitration Provision is void and unenforceable. *See* Order Denying Mot. to Compel Arb., *Tillage v. Comcast Corp.*, No. 3:17-cv-06477-VC at *1 (finding that Comcast's materially identical 2017 Subscriber Agreement "includes language that invalidates the entire arbitration clause if the [public injunctive relief waiver] is invalidated"); *Securitas Sec. Servs. USA, Inc. v. Superior Court*, 234 Cal. App. 4th 1109, 1125-27 (2015) (finding arbitration agreement as a whole was unenforceable where an unenforceable PAGA waiver was non-severable by the terms of the agreement); *Chalk v. T–Mobile USA, Inc.*, 560 F.3d 1087, 1098 (9th Cir. 2009) (finding arbitration agreement as a whole was unenforceable where an unenforceable class waiver was non-severable by the terms of the agreement).

### 4. Conclusion

For the foregoing reasons the Motion should be denied.

DATED: April 13, 2018                                         Respectfully submitted,

                                                        By:   */s/ Ray E. Gallo*
                                                              Ray E. Gallo
                                                              Hank Bates
                                                              Dominic Valerian
                                                              Attorneys for Plaintiff Brandon Hodges