MICHAEL J. STORTZ (SBN 139386)
Michael.Stortz@dbr.com
MATTHEW J. ADLER (SBN 273147)
Matthew.Adler@dbr.com
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, California 94105-2235
Telephone:    415-591-7500
Facsimile:    415-591-7510

SEAMUS C. DUFFY*
seamus.duffy@dbr.com
MICHAEL W. MCTIGUE JR.*
michael.mctigue@dbr.com
MEREDITH C. SLAWE*
meredith.slawe@dbr.com
DRINKER BIDDLE & REATH LLP
One Logan Square, Ste. 2000
Philadelphia, PA 19103-6996
Telephone:    (215) 988-2700
Facsimile:    (215) 988-2757

Attorneys for Defendant
COMCAST CABLE COMMUNICATIONS, LLC
*pro hac vice to be sought

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| BRANDON HODGES, for himself, and all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>COMCAST CABLE COMMUNICATIONS, LLC, a Delaware limited liability company; and DOES 1-50, inclusive,<br><br>　　　　　　Defendants. | Case No. 4:18-cv-01829-HSG<br><br>**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY LITIGATION**<br><br>Date:　　July 19, 2018<br>Time:　　2:00 p.m.<br>Ctrm:　　2 – 4th Floor<br>Judge:　　Hon. Haywood S. Gilliam, Jr. |

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S RELY ISO
MOTION TO COMPEL INDIVIDUAL ARBITRATION

CASE NO. 4:18-CV-01829-HSG

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ............................................................................................................ 1

II. ARGUMENT ................................................................................................................... 2

   A.  *McGill* Does Not Apply Because Plaintiff's Complaint Does Not Seek Public Injunctive Relief. ............................................................................................ 3

   B.  *McGill* Does Not Apply Because the Parties' Arbitration Agreement Does Not Require a Waiver "In Any Forum" of Plaintiff's Ability to Seek Public Injunctive Relief. ............................................................................................ 5

   C.  Even if *McGill* Applied, Its Rule is Preempted by the FAA. ................................. 7

      1.  The *McGill* Court's Interpretation of Section 3513 Impermissibly Frustrates the FAA's Objectives. ................................................................... 7

      2.  *McGill's* Preemption Analysis Conflicts with U.S. Supreme Court and Ninth Circuit Precedent. ......................................................................... 10

      3.  The Ninth Circuit's *Sakkab* Decision Does Not Insulate *McGill* from Preemption. .......................................................................................... 12

III. CONCLUSION ............................................................................................................ 144

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S REPLY ISO
MOTION TO COMPEL INDIVIDUAL ARBITRATION

- i -

CASE NO. 4:18-CV-01829-HSG

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013) ............................................................................................................. 8, 12

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ............................................................................................................. *passim*

*Broughton v. Cigna Healthplans of Cal.*,
  988 P.2d 67 (Cal. 1999) ............................................................................................................. 11

*Cruz v. PacifiCare Health Sys., Inc.*,
  66 P.3d 1157 (Cal. 2003) ........................................................................................................... 11

*Doctor's Assocs., Inc. v. Casarotto*,
  517 U.S. 681 (1996) .................................................................................................................... 8

*Ferguson v. Corinthian Colls., Inc.*,
  733 F.3d 928 (9th Cir. 2013) .......................................................................................... 2, 8, 11, 12

*Hansberry v. Lee*,
  311 U.S. 32 (1940) ..................................................................................................................... 13

*Hines v. Davidowitz*,
  312 U.S. 52 (1941) ....................................................................................................................... 3

*Kilgore v. KeyBank, Nat'l Ass'n*,
  718 F.3d 1052 (9th Cir. 2013) ................................................................................................ 4, 5

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
  137 S. Ct. 1421 (2017) ......................................................................................................... 10, 12

*McGill v. Citibank, N.A.*,
  393 P.3d 85 (Cal. 2017) ........................................................................................................ *passim*

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*
  473 U.S. 614 (1985) ................................................................................................................... 11

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ................................................................................................................... 13

*Preston v. Ferrer*,
  552 U.S. 346 (2008) ..................................................................................................................... 8

*Rappley v. Portfolio Recovery Assocs., LLC*,
  No. 17-0108, 2017 WL 3835259 (C.D. Cal. Aug. 24, 2017) ...................................................... 5

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S REPLY ISO
MOTION TO COMPEL INDIVIDUAL ARBITRATION

- ii -

CASE NO. 4:18-cv-01829-HSG

*Sakkab v. Luxottica Retail North America, Inc.*,
  803 F.3d 425 (9th Cir. 2015) ............................................................................................. 2, 13, 14

*Tillage v. Comcast Corp.*,
  No. 17-cv-06477-VC (N.D. Cal. Feb. 15, 2018) ...................................................................... 7

*Trout v. Comcast Cable Commc'ns, LLC*,
  No. 17-cv-01912 (N.D. Cal. Mar. 15, 2018) ....................................................................... 1, 7

*Wright v. Sirius XM Radio, Inc.*,
  No. 16-1688, 2017 WL 4676580 (C.D. Cal. June 1, 2017) ..................................................... 5

**STATUTES, RULES & REGULATIONS**

9 U.S.C. § 2 ................................................................................................................................ 7, 8

9 U.S.C. § 10 .................................................................................................................................. 9

California Civil Code § 3513 ............................................................................................... *passim*

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S REPLY ISO
MOTION TO COMPEL INDIVIDUAL ARBITRATION

- iii -

CASE NO. 4:18-CV-01829-HSG

## I. INTRODUCTION

Plaintiff Brandon Hodges ("Plaintiff") does not dispute Comcast's showing that he accepted the Comcast Agreement for Residential Services ("Subscriber Agreement," Wade Decl., Ex. 6 (ECF No. 8-6)), including the arbitration agreement therein. Nor does Plaintiff dispute Comcast's showing that he could have opted out of the arbitration agreement but did not, or Comcast's further showing that the scope of the arbitration agreement encompasses his claims in this case.

Instead, Plaintiff challenges enforcement of the arbitration agreement based on a single argument that the agreement is unenforceable under California Civil Code section 3513, as construed in *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017). *McGill* held that Section 3513 operated to invalidate an agreement that waived, *in any forum* (i.e., in court, in arbitration, or otherwise), the right to assert claims for public injunctive relief. *See id.* at 93–94.

But Plaintiff's argument fails, for at least three reasons:

***First***, *McGill* does not apply because Plaintiff does not seek public injunctive relief. He instead asserts claims for private class-wide relief under federal and California statutes. The injunctive relief he has pled in his Complaint is not on behalf of the public, but rather on behalf of a putative class of Comcast cable subscribers. Accordingly, his attempt to invoke *McGill* fails as a matter of law.

***Second***, even if Plaintiff sought public injunctive relief (which he does not), the Subscriber Agreement and its arbitration agreement do not preclude a request for public injunctive relief "in any forum." As Plaintiff is aware, the arbitration agreement specifically provides (and has at all relevant times provided) that a subscriber may opt out of arbitration. Under the plain terms of the Subscriber Agreement, a subscriber who has properly and timely opted out may thereafter pursue claims for public injunctive relief in court. *McGill* is therefore inapposite, as Judge Seeborg of this Court recently held in granting Comcast's motion to compel arbitration. *See Trout v. Comcast Cable Commc'ns, LLC*, No. 17-cv-01912-RS, Order (ECF No. 47) at 6 (N.D. Cal. Mar. 15, 2018) ("Comcast is on solid ground . . . in pointing out that critical to the *McGill* decision was the fact that the arbitration provision in that case purported to waive the plaintiff's right to seek public injunctive relief in any forum. Here, in contrast, not only does the arbitration provision lack any similar

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S REPLY ISO
MOTION TO COMPEL INDIVIDUAL ARBITRATION

- 1 -

CASE NO. 4:18-cv-01829-HSG

language, Comcast customers also were free to elect not to be bound by the arbitration agreement." (internal citation omitted)).[1]

***Third***, to the extent the *McGill* rule is found to apply, it is preempted by the Federal Arbitration Act ("FAA"). *See, e.g.*, *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 934–35 (9th Cir. 2013) ("[W]here a specific remedy has implications for the public at large, it must be arbitrated under the FAA if the parties have agreed to arbitrate it."). Plaintiff fails even to cite, much less to address, the controlling *Ferguson* precedent. Moreover, Plaintiff's purported reliance on *Sakkab v. Luxottica Retail North America, Inc.*, 803 F.3d 425 (9th Cir. 2015) is unavailing as (among other things) that case did not involve class claims for injunctive relief.

Plaintiff fails to provide any basis to avoid compliance with the parties' arbitration agreement and, therefore, the Court should grant Comcast's Motion to Compel Individual Arbitration and Stay Litigation.

## II.   ARGUMENT

The only ground on which Plaintiff opposes arbitration is California Civil Code section 3513 ("Section 3513"),[2] as construed in *McGill*. In *McGill*, the California Supreme Court addressed whether Citibank's arbitration clause, which, the parties ***stipulated***, precluded public injunctive relief claims "in any forum," was valid in light of this stipulation. 393 P.3d at 87 ("The question we address in this case is the validity of a provision in a predispute arbitration agreement that waives the right to seek this statutory remedy [(i.e., public injunctive relief)] in any forum."). Citing Section 3513, the court held that "insofar as the arbitration provision here purports to waive McGill's right to request ***in any forum*** such public injunctive relief, it is invalid and unenforceable under California law." *Id.* at 93–94 (emphasis added).

*McGill* does not disturb the enforceability of the parties' arbitration agreement here for at least three reasons. ***First***, *McGill* is inapposite because Plaintiff's Complaint does not assert a claim

---

[1]   A copy of the *Trout* Order granting Comcast's motion to compel arbitration and stay litigation is attached as Exhibit 1 to the accompanying Stortz Declaration. *See* Declaration of Michael J. Stortz ("Stortz Decl.") ¶ 2 & Ex. 1.
[2]   The statute provides, "[a]ny one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." Cal. Civ. Code § 3513.

for "public" injunctive relief. Unlike cases in which plaintiff sought injunctive relief on behalf of the general public, Plaintiff's claims challenge alleged Comcast practices that are directed to and affect *only* Comcast cable subscribers. **Second**, *McGill* does not apply to the parties' arbitration agreement because the decision, by its terms, applies only to cases in which an agreement seeks to bar a party from asserting a claim for public injunctive relief "in any forum." *See id.* at 90. The parties' arbitration agreement here does no such thing because it affords subscribers the right to opt out of arbitration. **Third**, to the extent that *McGill* is found to apply on the facts of this case, its construction of Section 3513 is preempted by the FAA "[b]ecause it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,'" in enacting the FAA. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). These points are discussed in turn below.

A. ***McGill* Does Not Apply Because Plaintiff's Complaint Does Not Seek Public Injunctive Relief.**

In order to invoke *McGill*, Plaintiff argues that he has asserted claims for public injunctive relief under the UCL, CIPA, and the Cable Act. But a review of the Complaint confirms that Plaintiff does not seek injunctive relief on behalf of the public, but rather seeks private relief intended to benefit Comcast cable subscribers like himself. *See* Compl., Prayer for Relief ¶¶ 1(a)–(g); Pl.s' Mem. of Points and Authorities in Opp'n (ECF No. 18) ("Pl.'s Opp'n") at 8–9 (enumerating Plaintiff's requests for injunctive relief, each of which pertains solely to Comcast "cable subscribers"). As the court stated in *McGill*, "public injunctive relief . . . is relief that has the ***primary purpose*** and effect of prohibiting unlawful acts that threaten future injury to the general public. Relief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a ***group of individuals similarly situated*** to the plaintiff—does not constitute public injunctive relief." *McGill*, 393 P.3d at 90 (emphasis added) (internal quotation marks and citation omitted); *cf. id.* at 93 (claim for public injunctive relief "does not constitute" a claim for class-wide relief). Stated differently, relief that would vindicate the interests of a defined subset of the population is not public injunctive relief. Instead, it is private injunctive relief on behalf of a putative class.

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S REPLY ISO
MOTION TO COMPEL INDIVIDUAL ARBITRATION

- 3 -

CASE NO. 4:18-CV-01829-HSG

Against this backdrop, the injunctive relief that Plaintiff requests here is not public injunctive relief. It would not even have the primary purpose of affecting the entire Comcast subscriber base, much less the general public as a whole. Rather, Plaintiff seeks injunctive relief that would only affect a subset of Comcast subscribers: those who subscribe to Comcast *cable* service. *See* Compl., Prayer for Relief ¶¶ 1(a)–(g) (seeking injunctive relief requiring Comcast to take certain action vis-à-vis its "cable subscribers"); *see also id.* ¶ 25 (defining the purported class as "[a]ll persons in California with a residential Comcast cable television subscription at any time during the applicable statutory limitations period(s)"). For example, Plaintiff seeks an injunction requiring Comcast to "stop using its cable system to collect *cable subscribers*' personally identifiable video activity data . . . without . . . consent"; to "destroy all personally identifiable video activity data collected from *cable subscribers* . . . without . . . consent"; and to "change its procedures to provide *cable subscribers* who request access to their PII with access to all such PII in Comcast's possession." Pl.'s Opp'n at 8 (emphasis added). This relief, if granted, would affect only Comcast *cable* subscribers, i.e., the putative class, rather than the general public. *See, e.g.*, *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1060–61 (9th Cir. 2013) (finding plaintiffs did not seek public injunctive relief under the UCL where, among other factors, "there [was] no real prospective benefit to the public at large from the relief sought").

Plaintiff argues otherwise, asserting that his requests for injunctive relief "will primarily benefit the public (rather than the plaintiff) because . . . cable operators' privacy violations are widespread, systemic offenses that threaten ongoing injury to the general public." Pl.s Opp'n at 14. Whatever that may mean, Plaintiff cannot credibly equate Comcast cable subscribers, or even all Comcast subscribers, with the general public. Plaintiff contends that the relief sought will benefit not only Comcast's "existing customers"—who he acknowledges are putative class members—but also Comcast's "prospective customers," who are not part of the putative class. *Id.* at 15. He references a 2017 Annual Report that, he claims, shows there are "at least 1.25 million total" Comcast customers in California. *Id.* Putting aside the fact that the cable-subscriber subset of this group would be even smaller, classifying a group of 1.25 million individuals as the "general public" would ignore the 37.5 million non-Comcast cable subscribers who call California home. As such,

the number of Comcast subscribers in California provides no basis to conclude that Plaintiff's requested injunctive relief would have the primary purpose of benefitting the public at large.

Moreover, the core test is not whether any member of the general public might ultimately benefit from the requested relief, but whether the requested injunctive relief would have the ***primary purpose*** of preventing injury to the public. *McGill*, 393 P.3d at 90; *see also Kilgore*, 718 F.3d at 1060–61. Plaintiff's requested injunctive relief, none of which even refers to "prospective customers," does not and cannot satisfy this test—***even if*** some unspecified portion of the "public" might be affected incidentally.

Accordingly, *McGill* is inapposite. Courts assessing the scope of *McGill* have found that it does not prohibit enforcement of a plaintiff's arbitration agreement where, as here, the plaintiff "only seeks private relief" which would "solely benefit the putative class members," and "any benefit to the public is merely incidental." *Wright v. Sirius XM Radio, Inc.*, No. 16-1688, 2017 WL 4676580, at *9 (C.D. Cal. June 1, 2017) (internal quotation marks and citations omitted); *see also Rappley v. Portfolio Recovery Assocs., LLC*, No. 17-0108, 2017 WL 3835259, at *6 (C.D. Cal. Aug. 24, 2017) ("[T]he relief Plaintiff seeks is not designed to prevent future harm to the public at large, but is rather intended to redress prior and future injury to a specific group of putative plaintiffs who have a debt defaulted on and subsequently purchased by [defendant]." (citations omitted)); *Kilgore*, 718 F.3d at 1060–61.

Because Plaintiff's starting premise—that the injunctive relief he seeks is public—is demonstrably false, *McGill* does not apply and does not prevent enforcement of the arbitration agreement.

B.  ***McGill* Does Not Apply Because the Parties' Arbitration Agreement Does Not Require a Waiver "In Any Forum" of Plaintiff's Ability to Seek Public Injunctive Relief.**

*McGill* also does not apply to Plaintiff's claims at issue here because the parties' arbitration agreement does ***not*** require Plaintiff to waive—"in any forum"—his ability to seek public injunctive relief.

In *McGill*, the parties stipulated that Citibank's arbitration clause precluded Plaintiff from seeking public injunctive relief "in any forum." 393 P.3d at 90 ("Given the parties' agreement, we

do not independently analyze the arbitration provision, but proceed based on the parties' shared view that it purports to preclude McGill from seeking public injunctive relief in arbitration, in court, or *in any forum*." (emphasis in original)).[3] Thus, the only issue *McGill* addressed was the validity of any agreement that, as the parties stipulated, waives a party's right to seek public injunctive relief "in any forum." *Id.* at 87.

In contrast, Comcast vigorously disputes that the parties' arbitration agreement effects such a universal waiver. Instead, the provision provides that new subscribers can opt out of the arbitration agreement within 30 days of their first Xfinity service activation. *See* Wade Decl., Ex. 6 § 13(d); *see also* Comcast's Mem. of Points and Authorities (ECF No. 7) at 5. The opt-out provision states (in all capital letters),

> IF YOU DO NOT WISH TO ARBITRATE DISPUTES, YOU MAY DECLINE TO HAVE YOUR DISPUTES WITH US ARBITRATED BY NOTIFYING US, WITHIN 30 DAYS OF YOUR FIRST XFINITY SERVICE ACTIVATION, BY VISITING WWW.XFINITY.COM/ARBITRATIONOPTOUT, OR IN WRITING BY MAIL . . . . YOUR DECISION TO OPT OUT OF THIS ARBITRATION PROVISION WILL HAVE NO ADVERSE EFFECT ON YOUR RELATIONSHIP WITH [COMCAST] OR SERVICE(S) PROVIDED BY US. IF YOU HAVE PREVIOUSLY OPTED OUT OF ARBITRATION WITH RESPECT TO THE ACCOUNT GOVERNED BY THIS AGREEMENT, YOU DO NOT NEED TO DO SO AGAIN. YOU MUST SEPARATELY OPT OUT FOR EACH ACCOUNT UNDER WHICH YOU RECEIVE SERVICES. ANY OPTOUTS SUBMITTED AFTER THIS PERIOD WILL NOT BE CONSIDERED EFFECTIVE.

Wade Decl., Ex. 6, § 13(d) (typography in original).[4]

By its terms, Comcast's arbitration agreement thus permits its subscribers to elect either the faster, less expensive, and purely bilateral process afforded by arbitration, or the more cumbersome procedures and broader scope of potential relief afforded by judicial or other non-arbitral

---

[3] Accordingly, the *McGill* court had no occasion to consider how the presence of an opt-out clause (which the Citibank agreement did in fact contain) altered the Section 3513 analysis. *See* 393 P.3d at 88 (describing opt-out provision).

[4] Plaintiff's Subscriber Agreement does not provide a renewed opportunity to opt out for existing customers; however, each of Plaintiff's prior Subscriber Agreements in effect at the time of installation of his services provided an opportunity to opt out of the arbitration agreement within 30 days of his first receiving the Agreement. *See id.*, Ex. 1 § 13(c); *id.*, Ex. 2 § 13(c); *id.*, Ex. 3 § 13(c). Plaintiff does not dispute that he did not opt out of arbitration after receiving any of these versions of the Agreement. *See generally* Pl.'s Opp'n.

proceedings. In light of that choice, which the California Supreme Court was *not* called upon to address in *McGill*, that court's holding does not apply to—much less void—Comcast's arbitration agreement.

Indeed, a recent decision from this Court determined that the opt-out provision in Comcast's arbitration agreement meant there was no universal waiver of claims for public injunctive relief—and thus *McGill* did not prevent enforcement of the agreement. *See Trout* Order (Ex. 1 to Stortz Decl.) at 4, 6. In reasoning that applies in full here, Judge Seeborg explained that:

> Comcast is on solid ground . . . in pointing out that critical to the *McGill* decision was the fact that the arbitration provision in that case purported to waive the plaintiff's right to seek public injunctive relief in *any forum*. Here, in contrast, not only does the arbitration provision lack any similar language, ***Comcast customers also were free to elect not to be bound*** by the arbitration agreement.

*Id.* at 6 (boldface emphasis added) (internal citation omitted).[5] Curiously, Plaintiff does not address the *Trout* decision, much less the fact that he could have opted out of arbitration. But it is precisely the opt-out opportunity that renders his *McGill* argument misplaced. This Court should follow the *Trout* decision and conclude that the parties' arbitration agreement does not require a waiver of public injunctive relief "in any forum."

**C.     Even if *McGill* Applied, Its Rule is Preempted by the FAA.**

   **1.     The *McGill* Court's Interpretation of Section 3513 Impermissibly Frustrates the FAA's Objectives.**

Finally, even if *McGill* applies here—which it does not—its rule is preempted by the FAA. The FAA provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Pursuant to the Supremacy Clause of the U.S. Constitution, when a law conflicts with the FAA, the conflicting state rule is displaced by the FAA through the doctrine of

---

[5]     Notably, this issue was not addressed in *Tillage v. Comcast Corporation*. *See* No. 17-cv-06477-VC, Order (ECF No. 37) (N.D. Cal. Feb. 15, 2018).

preemption. *See Preston v. Ferrer*, 552 U.S. 346, 353 (2008). Not all state rules affecting the validity of arbitration agreements are preempted by the FAA. State rules that "exist at law or in equity for the revocation of any contract" are valid and applicable to arbitration agreements. 9 U.S.C. § 2. Thus, the "savings clause" of Section 2 of the FAA "permits agreements to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 339 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). As explained in *Concepcion*, however, even a "generally applicable" rule of state contract law that would otherwise be valid under the FAA's savings clause is preempted if it (1) "interferes with fundamental attributes of arbitration," such as lower costs, simplified procedures, and a reasonably ascertainable scope of potential liability, or (2) is "applied in a fashion that disfavors arbitration." 563 U.S. at 341, 344, 348–50. In short, a state law is preempted when it "'frustrates the FAA's purposes and objectives.'" *Ferguson*, 733 F.3d at 936 (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 251 (2013) (Kagan, J., dissenting)).

To the extent that *McGill* applies here—which it does not—it is preempted by the FAA for three reasons.

***First***, the *McGill* rule does not fall within the savings clause of Section 2 of the FAA. Plaintiff argues that the *McGill* rule is a generally applicable contract defense because it "do[es] not apply only to arbitration or derive [its] meaning from the fact that an agreement to arbitrate is at issue." Pl.'s Opp'n at 17. The *McGill* rule, however, does not provide for "revocation" of a contract, nor does it address issues relating to the formation of the agreement. *See Concepcion*, 563 U.S. at 355 (Thomas, J., concurring) (reading Section 2 to "require enforcement of an agreement to arbitrate unless a party successfully asserts a defense concerning the formation of the agreement"). The *McGill* rule thus does not fall within the savings clause at all, and it is preempted by the FAA.

***Second***, even if the *McGill* rule is construed as a generally applicable rule, it is preempted by the FAA because it interferes with fundamental attributes of arbitration. As the U.S. Supreme

1  Court has explained, subjecting defendants to public injunction claims in arbitration "greatly
2  increases risks to [those] defendants"; the "absence of multilayered review [of arbitral awards]
3  makes it more likely that errors will go uncorrected." *Concepcion*, 563 U.S. at 350. "Defendants
4  are willing to accept the costs of these errors in arbitration," the Court explained, "since their
5  impact is limited to the size of individual disputes, and presumably outweighed by savings from
6  avoiding the courts." *Id.* But when the claim at issue is not merely the complaint of an individual
7  but instead the "damages allegedly owed to tens of thousands of potential claimants"—or, in the
8  case of a public injunction, relief for every California resident—"the risk of an error will often
9  become unacceptable. Faced with even a small chance of a devastating loss, defendants will be
10 pressured into settling questionable claims." *Id.* Stated differently, being forced to arbitrate
11 public injunctive relief claims would potentially convert every "bilateral" arbitration into a bet-
12 the-company matter. And that, in turn, would dramatically increase defendants' costs—which
13 would operate as yet another lever for plaintiffs and their counsel to use to secure a settlement.
14 *See id.* at 348 (citing "lower costs" and "greater efficiency" as two cardinal virtues of "bilateral
15 arbitration"); *id.* at 350–51 (discussing the limited judicial review available under the FAA and
16 "find[ing] it hard to believe that defendants would bet the company with no effective means of
17 review, and even harder to believe that Congress would have intended to allow state courts to
18 force such a decision").

19 Additionally, an arbitral system in which any plaintiff may seek public injunctive relief
20 subjects defendants to the risk of multiple, overlapping, and inconsistent injunctions on the very
21 same set of claims. There is no established mechanism, for example, for a single authority to
22 reconcile all injunctions issued against a particular defendant. And given the circumscribed
23 nature of judicial review available under the FAA, *see* 9 U.S.C. § 10; *Concepcion*, 563 U.S. at
24 350–51 ("[R]eview under § 10 focuses on misconduct rather than mistake."), the courts cannot
25 perform such a reconciliation. Such a system, in other words, "is not arbitration as envisioned by
26 the FAA . . . and therefore may not be required by state law." *Concepcion*, 563 U.S. at 351.

27
28

***Third***, the *McGill* rule "disfavors arbitration." *Concepcion*, 563 U.S. at 341. As explained in *Concepcion*, when a state-law rule sufficiently alters the foundational cost–benefit analysis that underlies parties' decisions to draft and invoke arbitration clauses, those parties "would have less incentive to continue resolving potentially duplicative claims on an individual basis." *Id.* at 347. Put differently, if a defendant knows that it will face either (1) a steady stream of "individual" claims for public injunctive relief in a stripped-down, limited-review arbitral forum; or (2) a litigated class or representative action in which it may have the benefit of formal rules of evidence and procedure, substantive appellate review, and claim- and issue-preclusion principles, it will not be long before defendants avoid arbitration altogether. A rule that forces such an illusory choice is a textbook example of "disfavor[ing] arbitration" in a manner prohibited by the FAA. *Id.* at 341. Moreover, the *McGill* rule "would have a disproportionate impact on arbitration agreements," *Concepcion*, 563 U.S. at 342, running afoul of the Supreme Court's warning against "any rule that covertly" disfavors arbitration. *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (2017). Because the *McGill* rule serves no other purpose than to invalidate arbitration agreements that California deems contrary to public policy, the rule disfavors arbitration and is preempted.

Thus, "[b]ecause it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' California's [interpretation of Section 3513 in *McGill*] is preempted by the FAA." *Id.* at 352 (citation omitted).

### 2. *McGill's* Preemption Analysis Conflicts with U.S. Supreme Court and Ninth Circuit Precedent.

Although the Ninth Circuit and U.S. Supreme Court have not yet squarely confronted the preemption question posed by *McGill*,[6] the Ninth Circuit **has** previously addressed FAA preemption of requests for public injunctive relief. Specifically, in *Ferguson*, the Ninth Circuit

---

[6] This question is presented in four appeals currently pending before the Ninth Circuit. *See McArdle v. AT&T Mobility LLC*, No. 17-17246 (9th Cir. filed Nov. 2, 2017); *Blair v. Rent-A-Ctr., Inc.*, No. 17-17221 (9th Cir. filed Oct. 30, 2017); *Tillage v. Comcast Corp.*, No. 18-15288 (9th Cir. filed Feb. 22, 2018); *Roberts v. AT&T Mobility LLC*, No. 18-15593 (9th Cir. filed Apr. 6, 2018).

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S REPLY ISO
MOTION TO COMPEL INDIVIDUAL ARBITRATION

- 10 -

CASE NO. 4:18-cv-01829-HSG

held that the California Supreme Court's *Broughton-Cruz* rule—which declared that contracts seeking to compel arbitration of claims for public injunctive relief were void as contrary to public policy—was preempted by the FAA. *See Ferguson*, 733 F.3d at 932–33 (discussing *Broughton v. Cigna Healthplans of Cal.*, 988 P.2d 67 (Cal. 1999) and *Cruz v. PacifiCare Health Sys., Inc.*, 66 P.3d 1157 (Cal. 2003)); *Ferguson*, 733 F.3d at 937.  The *McGill* court's contrary conclusion is inconsistent with the rule and reasoning of the Ninth Circuit in *Ferguson*—and therefore cannot stand—for three distinct but related reasons.

*First*, the *McGill* court relied heavily on the "effective vindication" doctrine in finding no FAA preemption.  The court cited U.S. Supreme Court decisions holding that, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* 473 U.S. 614, 628 (1985); *see McGill*, 393 P.3d at 95. But as the Ninth Circuit concluded in *Ferguson*, "that analysis does not apply to state statutes such as those that form the basis of Plaintiffs' request for a public injunction." 733 F.3d at 935–36.  That is because the doctrine "rest[s] on the principle that other *federal* statutes stand on equal footing with the FAA."  *Id.* at 936 (emphasis added).  Pursuant to the Supremacy Clause, however, *state* statutes are categorically placed on *inferior* footing and therefore are not saved from preemption by the respect that the FAA affords to claims grounded in federal law.  *See id.*

*Second*, the *McGill* court invoked state-law-based policy considerations, such as the state legislature's purported desire to broaden enforcement of the state's consumer-protection laws. *McGill*, 393 P.3d at 97.  *Ferguson*, however, reiterated the U.S. Supreme Court's directive that States cannot enforce rules that "disfavor arbitration," even if those rules are "'desirable for unrelated reasons.'" 733 F.3d at 936 (quoting *Concepcion*, 563 U.S. at 351).

*Third*, whereas *McGill* takes a formalistic approach to the preemption analysis and often relies on out-of-context quotations from various Supreme Court decisions,[7] *Ferguson* employs a

---

[7] *See McGill*, 393 P.3d at 95 (quoting *Mitsubishi Motors*, 473 U.S. at 628, 637 n.19, on the (inapposite) effective-vindication doctrine); *McGill*, 393 P.3d at 97 (asserting that *Concepcion* "actually *support[s]* the draw[ing] of a distinction between class claims and public injunctions" because class actions are a procedural device and public injunctions are a substantive remedy

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S REPLY ISO
MOTION TO COMPEL INDIVIDUAL ARBITRATION

- 11 -

CASE NO. 4:18-cv-01829-HSG

straightforward analysis that tracks the traditional preemption test—namely, "'asking whether the state law frustrates the FAA's purposes and objectives.'" 733 F.3d at 936 (quoting *Italian Colors*, 570 U.S. at 251 (Kagan, J., dissenting)); s*ee also Kindred Nursing*, 137 S. Ct. at 1428-29 (rejecting plaintiffs' formalistic FAA preemption argument).[8]

Here, the *McGill* court's interpretation of Section 3513 clearly "frustrates the FAA's purposes and objectives," as it overrides the parties' voluntary, bilateral agreement to settle their disputes *as private parties* in a less formal, less procedure-heavy forum. *See Italian Colors*, 570 U.S. at 251; *Concepcion*, 563 U.S. at 348. If Section 3513, as construed by *McGill*, precludes a voluntary agreement between private parties to resolve disputes either (a) individually (in an informal, less procedurally-heavy arbitral forum) or (b) in an individual, class, collective, or representative action (in a formal, procedurally-heavy judicial forum), then Section 3513 indisputably "frustrates the FAA's purposes and objectives" and is preempted.

Thus, even if *McGill* applied to this case—which it does not, due to Plaintiff not requesting public injunctive relief and the opt-out right in the parties' arbitration agreement—this Court should find that Section 3513 as construed by *McGill* is preempted by the FAA.

### 3. The Ninth Circuit's *Sakkab* Decision Does Not Insulate *McGill* from Preemption.

In a final fallback argument, Plaintiff argues that his claims are of a piece with the Private Attorneys General Act ("PAGA") claims at issue in the Ninth Circuit's *Sakkab* decision and therefore are not preempted. Plaintiff errs in two respects.

***First***, Plaintiff dramatically over-reads *Sakkab*. In that case, the Ninth Circuit concluded that **PAGA** actions were sufficiently distinct from ***class*** actions such that the Supreme Court's *Concepcion* decision did not apply. Specifically, the *Sakkab* court concluded that whereas a class-action plaintiff acts as a proxy for other injured parties, a PAGA plaintiff is "the proxy or

---

(internal quotation marks omitted)). *Contra Ferguson*, 733 F.3d at 934 ("reject[ing] the argument that because an injunction is technically a remedy rather than a cause of action, the *Broughton-Cruz* rule is insulated from the FAA").

[8] The *McGill* decision studiously avoids any mention of *Ferguson*, notwithstanding that the Ninth Circuit's preemption analysis in *Ferguson* is diametrically opposed to the preemption discussion in *McGill*—and reaches the opposite conclusion.

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S REPLY ISO
MOTION TO COMPEL INDIVIDUAL ARBITRATION

- 12 -

CASE NO. 4:18-cv-01829-HSG

agent *of the state's labor law enforcement agencies*, who are the *real parties in interest*." 803 F.3d at 435 (emphasis added) (internal quotation marks and citation omitted); *id.* (explaining that "PAGA does not give absent employees any substantive right to bring their 'own' PAGA claims."). Thus, in no way can Plaintiff be viewed as a quasi-government representative or PAGA plaintiff.

Indeed, a public injunction action is clearly distinguishable from a PAGA claim and has much more in common with a traditional class action. For example, because a PAGA action involves only a claim by the *sovereign*, the procedures required to arbitrate such a claim could be nearly as streamlined as in any commercial arbitration. *See id.* at 436. But because a public injunction claim (like a class action) seeks to protect the rights and interests of absent parties, the Due Process Clause would impose additional procedural requirements that would prevent a "public injunction arbitration" from offering the "efficient, streamlined procedures" that truly bilateral arbitration typically promises. *Concepcion*, 563 U.S. at 344.[9] Similarly, a PAGA claim—even a high-value one—is a one-and-done affair, whereas a public injunction claim likely would impose indefinite compliance obligations, likely involve perpetual arbitral oversight, and potentially imbue *millions* of individuals with the ability to seek review, enforcement, or modification of that injunction.

***Second***, even if *Sakkab* could be read as exempting from preemption *McGill*'s prohibition on agreements that waive the right to seek public injunctive relief in any forum—which it cannot—that exemption would not aid Plaintiff here because he has not in fact brought a "pure" claim for public injunctive relief; instead he (unlike the plaintiffs in *McGill*) has brought his

---

[9] *See Hansberry v. Lee*, 311 U.S. 32, 41–43 (1940) (adequacy of representation and commonality of interest required to protect absent plaintiffs); *Concepcion*, 563 U.S. at 349; *cf. Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985) (discussing due process rights of absent class members). Such requirements safeguard the rights of both absent beneficiaries of the plaintiff's actions and the named defendant, who wishes—whatever the outcome of the litigation—to face but a single representative suit on each particular set of claims. *See Shutts*, 472 U.S. at 805. It is thus highly unlikely that "public injunction arbitration" would offer the "efficient, streamlined procedures" that arbitration typically promises. *Concepcion*, 563 U.S. at 344.

1  claims **on behalf of, and for the benefit of, a class of California Comcast cable subscribers**.[10]
2  As noted above, however, the *Sakkab* court expressly distinguished PAGA actions from class
3  proceedings, acknowledging that waivers of the right to bring the latter type of claim were clearly
4  enforceable under *Concepcion*. See 803 F.3d at 435–36; s*ee also McGill*, 393 P.3d at 959–60
5  (permitting UCL/FAL claims for public injunctive relief absent class allegations). Thus, even if
6  *McGill*'s rule—which invalidates agreements that waive, in any forum, claims that seek public
7  injunctive relief—was not preempted, that rule would not save Plaintiff's claims here, which
8  assert private, putative class claims for injunctive relief.

### III.  CONCLUSION

For these reasons, and for those set forth in its moving papers, Comcast respectfully requests that the Court grant its motion to compel individual arbitration and to stay this action.

Dated: April 20, 2018                        DRINKER BIDDLE & REATH LLP

                                             By: /s/ Michael J. Stortz
                                                 Michael J. Stortz
                                                 Matthew J. Adler

                                                 Seamus C. Duffy
                                                 Michael W. McTigue Jr.
                                                 Meredith C. Slawe

                                             Attorneys for Defendant
                                             COMCAST CABLE COMMUNICATIONS, LLC

---

[10]  *See* Pl.'s Opp'n at 8; Compl., Prayer for Relief ¶¶ 1(a)–(g) (seeking injunctive relief requiring Comcast to take certain action vis-à-vis its "cable subscribers"); *see also* Compl. ¶ 25 (defining the purported class as "[a]ll persons in California with a residential Comcast cable television subscription at any time during the applicable statutory limitations period(s)").